ALEXANDER OLDHAM and wife v. FIRST NATIONAL BANK OF WILMINGTON, and others.

*National Bank—Mortgage—Ultra Vires—Mistake—Correction —Nudum Pactum—Usury—Pleading.*

1. When several debts due to a national bank are consolidated into one, and a new note is given, the bank is not acting *ultra vires* in taking a mortgage on real estate to secure such note.

2. It is competent for a national bank to purchase a note in favor of a third party, and thereby acquire incidentally a mortgage on land which had been given to secure it; and the claim so evidenced may be incorporate with other indebtedness and a new mortgage on real estate taken to secure the whole sum.

3. Even if taking such security by the bank were *ultra vires*, the mortgage would not be *void*, but only an offence against the United States, of which the mortgagor could not avail himself to defeat his own deed.

4. Where, by the mistake or oversight of the makers of a deed, the same is incorrectly written, they have no equity to call upon the grantee to correct the mistake in the books of the Register, as they have an ample

remedy under Bat. Rev., ch. 35, § 26 ; and a promise by the grantee to make such correction at his own expense and trouble would be *nudum pactum.*

5. Usurious interest previously received by a national bank in the course of renewals of a series of notes, terminating in one upon which suit is brought, cannot be pleaded by way of set-off or payment.

6. The *only* remedy open to the party aggrieved is that prescribed by the Act of Congress, a *separate* action for double the interest paid by him.

(*Fulke* v. *Fulke*, 7 Jones, 497 ; *Hatchell* v. *Odom*, 2 Dev. & Bat., 302, cited and approved.)

CIVIL ACTION tried at June Term, 1881, of NEW HANOVER Superior Court, before *Graves, J.*

This action was brought to restrain the defendants from selling certain real estate, situate in the city of Wilmington, the property of the plaintiff, Alexander Oldham, under two mortgages executed by the plaintiffs on the 5th day of September, 1878, the one to secure a debt to the defendant bank for $10,999.67, and the other to the defendant Burruss for $3,880.

In their complaint the plaintiffs set out eight distinct causes of action against the defendants, who demurred to the 3d, 6th, 7th and 8th causes, and answered as to the others.

In the court below, the issues of law alone were tried, and His Honor sustained the demurrer as to the 3d, 6th and 7th causes of action, but allowed the plaintiffs to amend as to the 7th, and overruled it as to the 8th. Appeals were taken by both plaintiffs and defendants and are now pending in this court, but they were argued together by counsel and are so treated by the court.

*Messrs. McRae & Strange* and *D. J. Devane,* for plaintiffs.
*Mr. E. S. Martin,* for defendants.

RUFFIN, J. We will consider the several grounds of demurrer in the order mentioned, and as the questions involved are purely matters of law depending upon the

16

pleadings, it will be necessary to set them out with some particularity.

The plaintiffs allege, as constituting their third cause of action, that the indebtedness of $10,999.67, alleged to be secured in the mortgage to the defendant bank, was made up of three items of alleged previous indebtedness, on the part of the plaintiff, Alexander, to the said bank : (a) a debt due the same for the sum of $3,800 evidenced by his note given to it on the 17th day of March, 1877 ; (b) an apparent indebtedness to the defendant Burruss for $6,200 evidenced by a note dated the 17th March, 1877, and given to said Burruss by name, but really in secret trust for the bank and for moneys lent by it, and that it was so taken in order to conceal the true nature of a mortgage which the plaintiffs then gave to defendant Burruss to secure the same, and to evade the act of congress which prohibits national banks to take such securities except for antecedent debts; (c) the sum of $1,199.67 which, as was alleged, the said Alexander had overdrawn on his deposit account ; that these three items being added on the 5th of September, 1878, made the sum for which the mortgage was given, and thereafter it bore a rate of interest different from that which had previously been paid on the several items of which it was composed, and therefore the plaintiffs insist that it became, (and especially that part of it which consisted of the debt taken from the defendant Burruss,) a cotemporaneous claim, and within the prohibition of the act of congress.

Taking the statements of the complaint to be true, it is impossible, we conceive, that the mortgage in question can be obnoxious to the objection urged against it.

Two of the items which went to make up the sum secured thereby, are admitted to have previously existed, as debts due the bank, and as to the third, to-wit, the $6,200 debt taken in the name of Burruss, it is immaterial whether it was so or not. If, as alleged, the entire consideration of the

original debt secured in the mortgage of the 17th March, 1877, proceeded from the bank, and the defendant Burruss acted throughout the transaction as its agent (though secretly), then from its very inception it was the claim of the bank. And while if the act of congress referred to should receive the construction insisted on by the plaintiffs, the security taken might have been assailed on some other grounds, it cannot be so on that assumed in the complaint. So on the other hand, if that debt were really what it purported to be, due to Burruss individually, there was no reason why the bank might not have purchased it at the moment of taking the new security.

In the case of *Bank* v. *Matthews*, 98 U. S., 621, it was expressly ruled that the purchase by an institution of a like character with the defendant bank, of a note secured in a mortgage, whereby it got the full benefit of the mortgage, was not within the purview of the statute. But apart from all that, the same court, in the same case, decided that a mortgage taken to secure a debt then newly created, or even future advances, was not *void*, since the act did not say so in terms, but was silent as to that, and the courts were always reluctant to the last degree to declare a forfeiture, and that the only objection to such a mortgage, which will be heard, must come from the government of the United States. So, too, in the case of *Bank* v. *Whiting*, 103 U. S., 99, so late as last year, that court made a similar decision, citing and approving the case of the *Bank* v. *Matthews, supra.*

As their sixth cause of action the plaintiffs allege that the defendant Burruss not being satisfied with the mortgage given him on the 17th of March, 1877, to secure the debt of $6,200, demanded of the plaintiffs that they should execute another to him for that purpose, and accordingly they did so on the 28th day of the same month, but either by mistake or design the said defendant caused it to be so written as to make it appear to be an additional indebtedness of

$6,200, whereas it was only an additional security for the same indebtedness, and upon the same being called to his attention, he promised to rectify the error on the register's books of the county, but has since failed and refused to do so, though often requested, to the damage of the plaintiff Alexander $10,000.

There seem to be several defects in this demand of the plaintiffs. In the first place, as stated, it is impossible for the court to see that any damage could have been the necessary consequence of the defendant's neglect in the particular complained of, and in the next place, if any mistake was made it was that of the plaintiffs themselves and in their own deed, so that the duty of correction rested as much upon them as upon the defendants, and the means of effecting it was entirely within their power. The statute (Bat. Rev. ch. 35 § 26) provides a remedy for every person in the registration of whose deed a mistake may be made, and if notwithstanding this the plaintiffs submitted to loss and inconvenience without any effort to relieve themselves, the consequences of their failure cannot be thrown upon others. In addition to this there was no consideration, moral or otherwise, for the promise of the defendant upon which the plaintiffs rely. The true test of a consideration, said this court in the case of *Fulke* v. *Fulke,* 7 Jones 497, is to be found in the enquiry—was there any benefit to the party promising, or any loss or inconvenience to the other party, *at the time the promise was made?* and admitting that a high sense of moral obligation might have prompted the defendants to make the correction when informed of the mistake, there was still no such legal duty resting upon them as a court could enforce. *Hatchell* v. *Odom,* 2 Dev. & Bat. 302.

For their seventh cause of action the plaintiffs say, that the note and mortgage for $10,999.67 given to the defendants, on the 5th day of September, 1878, were continuing parts of previous usurious agreements and transactions be-

tween the plaintiff Alexander and the defendant bank, directly and indirectly through its agent Burruss, under which there had been reserved and secured to the bank various illegal rates of interest, ranging from 12 to 24 per cent. per annum, and that the sum of $2,785.96 had been actually received by said bank in the way of such usurious interest. And they insist therefore that the mortgage is invalid by reason of such illegal consideration, but whether so or not, they say that the said sum of $2,785.96 is a payment of so much of the principal of the debt, and that they are entitled to a credit therefor.

The result of the decisions both of this, and the supreme court of the United States, is that no state law upon the subject of usury can be made to apply to national banks, and that the only law which touches them in this respect is the provisions of the statute under which they are organized. The construction given to those provisions too, by that court must be respected and accepted by every other tribunal, seeing that it is the court of last resort whose jurisdiction extends to the subject. And it is well, perhaps, however some of its determinations may differ from preconceived opinions, that we have a court whose judgments in such matters can have universal prevalence.

Institutions of this sort now pervade the whole country, and have become its great money-agents to the exclusion of almost all other agencies, so that it is a matter of infinite consequence that their powers and duties should be uniformly interpreted and enforced.

In the very recent case of *Barnett v. Bank*, 98 U. S., 555, it was held by a unanimous court, that usurious interest previously received by a National bank in the course of renewals of a series of bills terminating in the one then in suit, could not be pleaded by way of *set off* or *payment* to the bill, and that the only remedy the party aggrieved can have is that afforded by the national currency act of congress,

which act allows *nothing* in the way of such relief beyond a simple action of debt for twice the amount of interest paid, and that this relief could not be associated in the same action with other grounds of relief, but must be sought in an action brought solely and *exclusively* for that purpose, in which the single issue as to the guilt or innocence of the bank can be presented without the presence of any extraneous facts which might disturb the minds of the jury.

Influenced by this decision, as we feel ourselves to be, the supreme court of Pennsylvania in the case of *Bank* v. *Dushone*, (not yet reported at length but briefed in Albany Law Journal, March 12th, 1880,) made a similar ruling by which it overruled many of its previous adjudications.

As we read the decision, it goes to the full length of saying that in an action brought by a national bank the plea of *usurious interest paid*, whatever be its form, can avail nothing, and that no action for a like cause, of whatever nature, lies against such an institution save the one given in terms by the statute.

This being so, the demurrer was properly sustained in the court below, as to the plaintiffs' seventh cause of action in its original shape, and we cannot see that they are at all relieved by the amendment which they were allowed to make.

The interdiction of the statute as construed applies to their action in its present shape with as much force as ever. The action for money had and received on account of excess of interest paid, does not lie against the defendant bank, however it may lie against other defendants, for the reason that it is not the remedy given in the statute and no other can avail.

Treating the order of amendment as equivalent to a judgment overruling the demurrer to the complaint in its new form, we think His Honor erred.

In their eighth cause of action, the plaintiffs seek to re-

OLDHAM *v.* BANK.

cover of the defendant bank the sum of $5,571.92, that being twice the amount of the usurious interest alleged to have been paid by the plaintiff Alexander in the transactions out of which the action grew.

This, as we have just seen, they are not at liberty to do, except by an action brought *solely* and *exclusively* for that purpose, and much less are they permitted to have any standing in a court of equity until they have waived their right to the penalty imposed by the act of congress. A failure to remit such a penalty was held to be a good ground for demurrer to a bill seeking the aid of a court of equity in the case of *Branson* v. *Dixon,* 1 Mur., 225. But it may be doubted whether it is so under the code which undertakes to say of what the causes for a demurrer shall consist. It is not necessary in this case that we should consider that question, or the further question whether a court of equity would not of its own motion withhold its aid in such a case, as the plaintiffs' action must fail for the reasons first given.

The judgment of the court below sustaining the demurrer as to the 3rd and 6th causes of action is affirmed, and the judgment overruling the demurrer as to the 7th and 8th causes of action is reversed, and as to them also the demurrer is sustained.

Let this be certified to the superior court of New Hanover county, where the action is pending.

Error.                          Demurrer sustained.