BANK, Commercial National of Charlotte v. C. N. SIMPSON, Adm'r.

*Contract, place of—Bankruptcy, surety not relieved by discharge of his principal in—Evidence.*

An action was brought against an endorser of a note executed by a firm in renewal of a former note, the transaction taking place in South Carolina, but the note was *sent and delivered* to the plaintiff bank at Charlotte in this state to be discounted. One of the firm was adjudicated a bankrupt upon his individual petition and the note was proved against his estate, and the plaintiff bank and other creditors gave their assent as required by law to his discharge. The bank discounted the note and at maturity extended the time of payment to the makers for a valuable consideration, but reserved its rights against the endorser; *Held*—

(1) The court properly refused to charge there was no evidence of a reservation of right against the defendant surety.

(2) The court also properly refused to permit the bankrupt's schedule to be introduced as evidence that the contract was made in South Carolina. It relates to his own liabilities and was not competent in the controversy between the parties to this suit and in their relations to each other.

(3) The evidence of a member of the firm in reference to the manner of endorsement of the renewal note for the purpose of continuing the negotiated loan, was admissible, as tending to show where the contract was to be made. ·

(4) The contract is governed by the laws of this state—it being consummated here and efficacy given to the note by its delivery and negotiation at the bank, in pursuance of the intent of all the parties; and no demand or notice of non-payment is required to bind the endorser.

(5) A surety's liability to a creditor is not affected by the discharge in bankruptcy of the principal. Such discharge is the act of the law, and does not release one liable for the same debt, either as partner, endorser, or otherwise. And a creditor's assent to the discharge is that it be granted under the bankrupt law.

(*Bank* v. *Lineberger*, 83 N. C., 454; *Hoffman* v. *Moore*, 82 N. C., 313; *Ingersoll* v. *Long*, 4 Dev. & Bat., 293; *Oldham* v. *Bank*, 85 N. C., 240, cited and approved).

CIVIL ACTION tried at Fall Term, 1883, of MECKLENBURG Superior Court, before *Gilmer, J.*

The action is against the defendant, as endorser of two promissory notes, one executed on August 13, 1879, by the partnership

of Cureton, Audrey & Co., for $2,000, payable at thirty days, the other executed by the partnership of Stevens & Cureton on December 12, 1877, for $2,500, also due at thirty days, the former drawn payable to the defendant and endorsed by him alone, the latter drawn payable to the defendant and one William Stevens and jointly endorsed.

The parties all reside in South Carolina and the notes were prepared and assigned there, though purporting to have been made at Charlotte in this state, for the purpose of being sent to the plaintiff to be discounted, and were so sent and the money therefor obtained from the bank at Charlotte. The makers and endorsers are all insolvent except the defendant against whom the action was commenced on August 13, 1874.

In 1878, J. H. W. Stevens, a member of each of the firms who made the notes, filed his individual petition in bankruptcy, and was adjudicated such and obtained his discharge.

By the amendatory act of June 22, 1874, it is declared that " in cases of voluntary bankruptcy, no discharge shall be granted to a debtor whose assets shall not be equal to 30 per centum of the claims proved against his estate, upon which he shall be liable as principal debtor, without the assent of at least one-fourth of his creditors in number and one-third in value." Rev. Stat. of U. S., ch. 390, §9—supplement.

The debts in controversy were proved against the bankrupt's estate, and the plaintiff, with other creditors, gave the assent required by law under which the discharge was granted and without which it could not have been obtained.

Among other issues submitted to the jury, they find that the note for $2,500 was in renewal of what was due on a previous note for $3,096, and that the latter was given and accepted in part payment of the debt of $11,200 contracted to be paid in the purchase of a tract of land by Stevens & Cureton from William Stevens, and to secure which a deed of mortgage was made of the same land by the purchasers, the note for which purchase money was discounted at the bank and assigned to it, and the

plaintiff has been in possession of the mortgaged premises and is appropriating the rents and profits to its own use; that under an agreement, the interest to be paid on the notes in suit was at the rate of one per cent. per month:

And that at or about the maturity of the note for $2,000, the time of payment was extended to the makers for thirty-three days for a valuable consideration, and at the same time the bank reserved its rights and remedies against the defendant, the endorser.

Upon these facts the court rendered judgment against the defendant for the full amount demanded in the complaint with costs, and the defendant appeals.

*Mr. Platt D. Walker*, for plaintiff.
*Messrs. Jones & Johnston*, for defendant.

SMITH, C. J., after stating the case. The first exception taken by the appellant is to the refusal of the court to charge the jury, as was requested, that there was no evidence of the reservation of the right to proceed against the defendant, or, if there was, it is contained in a correspondence, and the force and effect of which should have been declared by the court as a matter of law.

Examining the accompanying exhibits upon which the objection rests, if sufficient to show indulgence, it manifests an equally clear purpose not to surrender, and to retain full rights against the surety, in the fact, that the renewal note is to be held for his signature before its acceptance. It would be most manifestly wrong to deduce from the evidence an arrangement to postpone without the associated intent to hold the defendant liable.

Upon this double finding, the authorities are clear that the defendant is not exonerated by what was done. *Rees* v. *Benington*, 2 White & Tudor's cases in Equity, note 360 (716), and cases cited; 2 Danl. Neg. Ins., §1322; *Bank* v. *Lineberger*, 83 N. C., 454.

*Second Exc.*   The defendant proposed to read from the schedule filed with the bankrupt's petition the enumeration of the notes and the place of their contract as therein stated, in order to show that it was entered into in South Carolina and is governed by the laws of that state.   This, on objection, was not allowed.

It is true it is requisite that the bankrupt state the locality whereat the several debts owing by him were made, but as his mere declaration we cannot see how it is competent upon the disputed fact between strangers and in their relations to each other.   It is but the assertion on oath of the bankrupt himself in reference to his own liabilities, and was properly ruled out.

But no injury can come from the rejection of the evidence, since the fact seems not to have been denied, and the jury find that the notes were endorsed by the defendant's intestate in South Carolina.

*Third Exc.*   Upon the cross-examination of T. J. Cureton, a member of each of the firms that gave the notes, and introduced as a witness for the defendant, he was allowed, after objection, to testify that he came to Charlotte with the note bearing the endorsement of the intestate's name ; that it had been reduced, after several renewals, from $5,000 to $2,000 ; that it was presented to the intestate and he knew at what place and for what purpose it was to be negotiated ; and that the negotiation for the loan of $3,096 was also effected in Charlotte by the witness and Stevens, the intestate not being present.   His name was afterwards endorsed and he was informed that it was for a loan already negotiated in Charlotte by himself and Stevens.

We do not see why this testimony is not pertinent and proper in determining the place in which the contract was to be, and in law was consummated, and under and subject to the laws of what state.

*Fourth Exc.*   The next exception to the ruling is that the notes being completed in South Carolina, and, as intended, sent

to the plaintiff bank for discount, and being discounted, the liability incurred by the endorsement was controlled by the laws of that state, and the note not having been protested for non-payment, and notice given to the endorser, he is exonerated.

There was no proof as to the statute in force in that state placing such notes upon the footing of inland bills of exchange, or whether the statute of ANNE is in force as a part of the common law. But however this may be, the signatures to the notes were but the putting the instruments in form—completing them —for delivery to the bank at Charlotte, and until the delivery no obligation was incurred by any one. The contract was consummated and the liabilities of the parties in their relations to the bank and to each other *fixed* at the time and place of negotiating the loan and upon the authorized delivery of the notes to the plaintiff. The law of this state must, therefore, govern in determining the legal character and consequences of the transaction, and under it no demand, protest or notice of non-payment is required to bind the endorser. THE CODE, §50; *Hoffman* v. *Moore*, 82 N. C., 313.

The authorities referred to in the argument for appellant sustain the general proposition that where a note or bill perfected and put in circulation, and endorsed in another state or states, the successive endorsements are deemed each a new drawing, and regulated by the law of the state wherein it was made. 1 Danl. Neg. Ins., §899; Story Conf. Laws, §§ 307, 314, 316, 360. And so it is held in the case cited, *Ingersoll* v. *Long*, 4 Dev. & Bat., 293, that one statute which makes an endorser of a note a surety is confined to such as are made and become operative as a contract in this state, and does not apply to such as are made beyond its limits. "It does not operate," in the words of GASTON, J., "upon an endorsement when it cannot operate upon the preceding endorsements." A different construction and a wider scope given to the act would obviously open the door to serious inconveniences and difficulties in its application, and disturb the relations subsisting among successive endorsers as such.

But the notes in this case are not of this kind, nor are there different rules of responsibility attaching to the parties. The intestate, the payee, is the sole endorser, and his obligation under the law of this state was created, as was the obligation of the makers, at one and the same time, when efficacy was given to the instruments by their negotiation and delivery at the bank, as intended by all. The learning in reference to divided and differing liabilities, incurred by endorsements made after the execution of the note in a different jurisdiction and under different laws, has no application.

*Fifth Exc.* The remaining exception has reference to the effect of the discharge in bankruptcy of the makers of the notes, a principal debtor, upon the liability of the intestate who endorsed.

It is denied that the discharge, being an act of the law, would not, without the coöperation of the creditors, exonerate the surety, but this effect is ascribed to the voluntary action of the bank in enabling the debtor to obtain the discharge.

We do not attach importance to the suggestion that the assent was not given by the authorized agent of the bank, its president, since the adjudication proceeds upon the fact that the assent of a sufficient number of the creditors was given, and among them that of the bank, a party that proved its debts; nor to the fact that the assent of a sufficient number was given, exclusive of the bank, since the latter is one of the assenting creditors contributing to the result.

It is contended in answer to this objection from the appellant that the bankrupt, having applied in his individual capacity alone, is released from his own separate debts, but the debts of the partnership remain unimpaired as to all the partners, and we are referred to cases in which such seems to have been the rulings. In the well considered opinion of LOWELL, District Judge, delivered in *Wilkins* v. *Davis*, 15 Nat. Bank. Reg., 60, a different view is taken, and it is held that the bankrupt interest in the partnership estate after the settlement of the joint debts (that is, his

share) passes to the assignee, and with the transfer the bankrupt's exoneration from the firm debts, while the other partners retain the joint estate to work out their own exoneration by applying it to the common joint debts.

But conceding that the bankrupt partner becomes released from the partnership debts, the question recurs as to its effect under the circumstances of this case upon the liability of the surety.

Our attention has been called to two adjudications in which it is expressly held that the surety is discharged. *In re McDonald*, 14 Nat. Bank. Reg., 447 ; *Calloway* v. *Snap,* 78 Kent. Rep., 561.

In the latter case, decided in 1880, after referring to *Brown* v. *Carr*, 7 Bing., 508, where the report has only the head-note, while the case is reported in full in 2 Russell, 60, 3 Eng. Com., Ch. Rep., 250, the Chief-Justice who delivered the opinion says: "We have only the syllabus of the opinion in *Brown* v. *Carr*, which reads as follows : A surety for a bankrupt is not discharged by the creditors signing the bankrupt's certificate, even after notice from the bankrupt not to do so. Not having access to the English bankruptcy act, under which the decision was made, it is impossible to determine how far the decision in that case bears upon the question before us." After discussing also other authorities, he proceeds : " But under our statute the assent of creditors to the discharge of a debtor who has not surrendered the requisite amount of assets, is mere matter of grace. It is not necessary to the completeness of the bankrupt proceedings, is not in the interest of creditors generally or even of those who give their consent, but is in the interest of the debtor alone and to the prejudice of the creditors." And he concludes that the assent of the creditor to the discharge of the principal debtor " was as effectual to release the surety as if she had undertaken by a valid agreement not to sue on the note for a specified time, or until after she should make demand of payment." .

This decision, however, confronts several others rendered in courts of the highest authority, in which it is ruled that such a discharge is by law and does not relieve the surety of the debt.

In *Brown* v. *Carr*, the case adverted to in the opinion of the supreme court of Kentucky, the defendants, silk merchants, had sold goods, and paid acceptance for one Barber under a written guaranty of the plaintiff, and were prosecuting their action against the guarantor who resisted the claim. Pending the action, Barber was declared a bankrupt and the defendants proved under the commission their demand against him. They also after notice not to do so from the plaintiff (Brown) signed the certificate, which without their signature could not have been obtained. They afterwards obtained a verdict against the plaintiff, and he filed his bill to restrain the enforcement of the debt upon the ground that he had been exonerated by the action of the creditors.

"The LORD CHANCELLOR was of opinion that no equity arose in favor of the plaintiff out of the conduct of the defendants in enabling the bankrupt by their signature to obtain his certificate."

In *Ex-parte Jacobs*, 12 Eng. Rep., 707, L. R., 10, ch. app., 211, it was contended that the creditor had signed the resolution passed by the requisite number of creditors at a previous meeting, agreeing to a composition with the bankrupt debtor of five shillings in the pound and that this discharged the secondary liability of the drawer Jacobs. The opinion of the Lord Justice read and concurred in by JAMES, L. J., after stating the facts, proceeds thus: "There can be no doubt that if the holder of a bill, by becoming party to a deed or agreement, independently of any bankruptcy act, agrees to accept a composition from the acceptor, he thereby discharges the drawer; but on the other hand, it is equally clear that if the acceptor is discharged from his liability by operation of law by becoming a bankrupt, the liability of the drawer to the holder is not thereby affected."

Then referring to a contrary ruling in *Wilson* v. *Lloyd*, Law

Rep., 16 Eq., 60, and the many points in that case, the opinion proceeds: "On the other hand, in the case of *Megrath* v. *Gray*, Law Rep., 9 C. P., 216, the Court of Common Pleas appear to have come, after great consideration, to a directly contrary conclusion. * * * We agree in the decision of the Court of Common Pleas and in the reasons they have given for it. We think that a discharge of a debtor under liquidation or a composition is really a discharge in bankruptcy *by operation of law.*

In *Sigomney* v. *Williams*, 1 Gray (Mass.), 623, a case arose under a state insolvent law, with provisions very like those contained in the act of Congress, in which one Wood received a discharge from all his debts from the commissioner of insolvency. His assets did not pay fifty per cent., but all the creditors of the partnership, of which he was a member, and a majority in number and value of the creditors who had proved their claims against the insolvent's estate as an individual, assented in writing to his discharge. In order to such majority, it was necessary to include the note in suit, and the executors of the creditor, with knowledge of the fact, gave their assent.

SHAW, C. J., said: "It is true that as Wood's assets did not pay fifty per cent. of the claims against his estate, he would not have been entitled to his discharge, without the assent of a majority of his creditors, and that the commissioner could not lawfully have granted him a discharge without such assent. But it does not follow that this discharge derives its whole force and effect from the assent, and operates like a technical release of Wood under seal. It was an assent that Wood should receive a discharge under the insolvent law, having the force and effect given to such a discharge by the law, which is a discharge of the individual debtor, expressly reserving the liability of any partner or surety. Whether, therefore, the discharge was obtained by the consent of the creditors or without, it was a *discharge obtained pursuant to law, having the effect given to it by law and no more,* to discharge the individual, but not to discharge his partner.

But a case presenting the very question now considered under the act of Congress, is found in *Guild* v. *Butler*, 122 Mass., 498, the decision in which is pronounced by GRAY, C. J., now an Associate Justice of the supreme court of the United States. We reproduce such extracts as are necessary to an understanding of the ruling.

"By the existing acts of Congress upon the subject of bankruptcy, a bankrupt's estate may be settled and the bankrupt discharged in either of three ways:

1. The estate may be administered in the ordinary manner by assignees appointed for the purpose, and a certificate of discharge be granted by the court, with the assent, in some cases, of a certain proportion of the creditors who have proved their claims. Any person liable as surety for the bankrupt may, upon paying the debt, even after the commencement of proceedings in bankruptcy, prove the debt, or stand in the place of the creditor. U. S. Rev. Stat., §5070. But the surety's liability to the creditor is not affected by any certificate of discharge granted to the principal. U. S. Rev. Stat., §5118.

2. The estate may be wound up and settled by trustees nominated by the creditors upon a resolution passed at a meeting for the purpose by three-fourths in value of the creditors whose claims have been proved, and confirmed by the court, and upon the signing and filing by such proportion of the creditors of a consent in writing that the estate shall be so settled. *Ib.,* §5103.

3. The creditors, at a meeting ordered by the court either before or after an adjudication in bankruptcy, may resolve that a composition proposed by the debtor shall be accepted in satisfaction of the debts due them from him. U. S. Stat., June 22d, 1874, §17—substantially the English bankruptcy act of 1869.

"It has been determined in England," continues the Chief-Justice, "by decisions of high authority and upon most satisfactory reasons, that a creditor, by participating in either of the three forms of proceeding, *whether by assenting to a certificate of discharge* or by consenting to a resolution either for winding up

through trustees or for the acceptance of a composition proposed by the debtor, *does not release* or affect the liability of a surety."

In whatever way authorized by the act the discharge may be obtained, or whatever precedent conditions must be complied with in order thereto, the discharge is the *act of the law*, and that act expressly provides that " no discharge shall release, discharge or affect any person liable for the same debt for or with the bankrupt, either as partner, joint contractor, *endorser, surety*, or otherwise." U. S. Rev. Stat., §5118.

This is the restriction put by Congress upon the discharge, and whatever changes may have been subsequently introduced, hindering or facilitating the attainment of the end, the discharge, in the extent of its operation, remains unchanged. Whether the creditor gives his consent in cases where it is required or not, the force and effect of the discharge is the same, and it leaves a surety exposed to the creditor's claim on him. How can it be, then, that a discharge shall exonerate the surety, when the act says it shall not, and the provisions of the act are confined by the constitution to the judgment of Congress? We think it manifest that where the creditor's assent was required, it was not intended to modify the effect previously ascribed to the discharge, and exonerate one who, the law declares, shall be liable as before. Brant on Suretyship, §126; Bump. Bank'cy, 543.

The allegation of usury is not an answer to the claim. *Oldham* v. *Bank*, 85 N. C., 240; *Barnes* v. *Bank*, 98 U. S. Rep., 555.

Upon a full review of the record, we find no error, and must affirm the judgment.

No error. Affirmed.