## Norfolk National Bank v. P. Schwenk & Company.

Filed November 19, 1895.   No. 5808.

1. **Usury**: Action for Penalty: Limitation. An action against a national bank to recover the penalty provided in section 5198 of the Revised Statutes of the United States, for knowingly taking and receiving usurious interest, must be brought in two years from the time the usurious transaction occurred. (*First Nat. Bank of Dorchester v. Smith*, 36 Neb., 199.)

2. ———: ———: Set-Off. Following the decisions of the supreme court of the United States, it was *held* that usurious interest paid a national bank on a note cannot be applied by way of set-off or payment against the principal sum due in any suit by the bank upon such note.

3. **National Banks**: Usury. Where a national bank knowingly charges usurious interest upon a loan of money which is included in the note, in an action to enforce the contract, the entire interest is forfeited. Where illegal interest has been paid to a national bank, the borrower may recover double the amount of interest actually paid, if the action is brought within two years after such payment is made.

Error from the district court of Madison county. Tried below before Norris, J.

*Powers & Hays*, for plaintiff in error, cited: *Driesbach v. Second Nat. Bank*, 14 Otto [U. S.], 52; *Farmers & Mechanics Bank v. Hoagland*, 7 Fed. Rep., 159; *Barnet v. Second Nat. Bank*, 98 U. S., 555; *Higley v. First Nat. Bank*, 26 O. St., 75; *Central Nat. Bank v. Pratt*, 115 Mass., 539.

*Barnes & Tyler*, *H. C. Brome*, and *B. T. White*, contra, cited: *First Nat. Bank of Whitehall v. Lamb*, 50 N. Y., 95; *Hintermister v. First Nat. Bank of Chittenango*, 64 N. Y., 212; *National Bank of Auburn v. Lewis*, 75 N. Y.,

516; *First Nat. Bank v. Commonwealth*, 9 Wall. [U. S.], 353.

*E. K. Valentine*, also for defendants in error.

NORVAL, C. J.

This action was brought in the court below on the 5th day of August, 1889, by Peter Schwenk & Co. under the provisions of section 5198 of the Revised Statutes of the United States to recover the penalty therein prescribed for taking and receiving usurious interest. The petition contains thirty-eight counts, which are substantially alike, excepting as to the date and amount of the loans made by the defendant to the plaintiffs, and the date and amount of illegal interest paid on such loans.

The first count alleges, in effect, that on the 5th day of August, 1889, the plaintiffs, as principals, and T. H. Egbert, as surety, executed and delivered to the Norfolk National Bank their promissory note, therein set forth, payable to the order of said bank, calling for the sum of $582.80, due in sixty days, with interest at ten per cent per annum from maturity; that at the same time plaintiffs paid to the defendant and the defendant unlawfully and wrongfully received as interest upon said note, from the date thereof until its maturity, the sum of $11.65, the same being interest at the rate of twelve per cent per annum in advance, and that by reason of the premises defendant became and is justly indebted to plaintiffs in the sum of $23.30, no part of which has been paid. The amount of usurious interest alleged in the other thirty-seven counts of the petition to have been paid by the plaintiffs, and unlawfully and knowingly received by the defendant, aggregate the sum of $1,046.25. The plaintiffs pray judgment for double the amount of interest alleged to have been paid, to-wit, the sum of $2,139.10. The defendant answered denying each and every allegation

of the petition, and set up, as a cross-demand against the plaintiffs, the sum of $3,500 due upon three promissory notes executed and delivered by the plaintiffs to the bank, described as follows: One for $1,500, dated May 1, 1889, and due in ninety days thereafter; one for the sum of $1,000, of the date of May 4, 1889, due in ninety days from date; and one for $1,000, dated April 19, 1889, maturing in ninety days from date. The notes called for ten per cent interest from maturity. The answer further avers that said notes are wholly unpaid and that each one arose out of the contracts and transactions set up in the petition, is connected with the subject of the action, and is a renewal of one of the notes described in the petition. The defendant asks judgment against the plaintiffs for the sum of $3,500, with ten per cent interest thereon, according to the terms of said notes. To this answer the plaintiffs replied, admitting the execution and delivery of the notes and the non-payment thereof, and alleged, in substance and effect, that said notes were renewals of the notes previously given to the defendant for various loans of money; that defendant at the time contracted for, exacted, and received, and the plaintiffs paid, as illegal interest on said original notes and renewals thereof for the use of the amounts borrowed, the sum of $833.50, which, together with the sum of $2,139.10 demanded in the petition, plaintiffs ask to have applied as payments on the notes forming the basis of the defendant's counter-claims or cross-demands.

Upon a trial of the issues to a jury, the following verdict was returned:

"We, the jury impaneled and sworn in the above entitled cause, do find as follows:

"1. We find for the plaintiffs P. Schwenk & Co. on the several causes of action set out in their petition, the sum of $2,139.10.

"2. We do further find for the defendant the Norfolk National Bank, on its several causes of action set up in the answer, the sum of $3,500.

"3. We do further find for the plaintiffs P. Schwenk & Co., on the several counter-claims or offsets set up in the reply, the sum of $802.50.

"And we further find that there is due from the plaintiffs to the defendant (the balance) the sum of $538.40."

From a judgment for the defendant entered on the verdict for $538.40, and from an order denying the motion for a new trial, the bank prosecutes a petition in error to this court. The evidence introduced on behalf of the plaintiffs below tended to sustain the averments contained in the several counts of the petition, and the jury found for the plaintiffs for the full amount claimed.

The main ground urged for a reversal of the judgment, and the only one decided, is that the plaintiffs were allowed, as a set-off against the notes described in the answer, the sum of $802.50, on account of usurious interest paid by the plaintiffs to the bank on the loans evidenced by said notes. It appears from the pleadings and evidence that the bank made the plaintiffs below loans upon the dates and for the amounts following: January 14, 1886, $1,000; June 16, 1885, $1,500; and May 11, 1886, $1,500. Plaintiffs at the same time executed their promissory notes for the respective sums, which were renewed from time to time, the notes set up in the answer being the last renewals thereof. On the making of the several loans and upon each renewal note, the plaintiffs paid the bank interest exceeding the lawful rate, all of said payments having been made more than two years prior to the bringing of this suit. The question is squarely presented whether the amount of interest paid a national bank on a usurious loan of money can be applied as a payment on the note given for the sum lent in an action brought to recover the principal sum? Section 5, chapter 44, of the Compiled Statutes of this state declares: "If a greater rate of interest than is hereinbefore allowed shall be contracted for or received or reserved, the contract shall not, therefore, be void;

but if in any action on such contract proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the plaintiff shall only recover the principal, without interest, and the defendant shall recover costs; and if interest shall have been paid thereon, judgment shall be for the principal, deducting interest paid." There is no room for doubt that, as a general rule, where a loan is tainted with the vice of usury, in an action by the lender, to recover the debt, under the foregoing provision, all payments of interest by the borrower must be applied as payments *pro tanto* of the principal. (*Nelson v. Hurford*, 11 Neb., 465; *Knox v. Williams*, 24 Neb., 630; *Blackwell v. Wright*, 27 Neb., 269.)

It is contended that the statute of this state above quoted does not apply to national banks in so far as it allows all sums paid as usurious interest to be credited as a payment upon the principal debt, but that section 5198 of the Revised Statutes of the United States alone determines the penalties that shall be imposed upon national banks for exacting illegal interest. This section provides: "The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it and which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back in an action in the nature of an action of debt, twice the amount of interest thus paid from the association taking or receiving the same, provided such action is commenced within two years from the time the usurious transaction occurred." The foregoing section has more than once been under consideration by this court. In construing its provisions in the case of *Hall v. First Nat. Bank of Fairfield*, 30 Neb., 99, it was said: "It is apparent that this section covers two classes of cases. The last clause

29

provides that when illegal interest has been paid to a na-
tional bank double the amount so paid may be recovered
back, while under the first clause of the section, if usurious
interest has been knowingly charged, but not paid, a re-
covery can only be had for the amount borrowed ; in other
words, where illegal interest has been added into the note,
but not paid, it cannot be recovered in an action brought
for that purpose." The case was followed with approval
in *McGhee v. First Nat. Bank of Tobias*, 40 Neb., 92.
Under said section 5198, the loaning of money by a na-
tional bank at a usurious rate forfeits all interest, and in
case interest has been paid on such a contract, the borrower
may recover double the amount thereof where the action is
brought within two years after such payment; but the fed-
eral statute contains no provision which authorizes the ap-
plying of payments of usurious interest upon the principal
sum, while the statute of this state permits the deduction
of interest payments from the principal.

Which statute should govern and control in this case?
If the only remedy afforded the borrower, and the only
penalty imposed upon a national bank, is that prescribed
by said section 5198, it is clear that the plaintiffs below
were not entitled to recoup from the face of the three notes
set up in the answer any sum whatever on account of usuri-
ous interest paid thereon to the bank. It has been held in
some of the sister states that national banks are not exempt
from the penalties imposed by state laws for exacting
usurious interest by such banking institutions. In other
words, where a national bank makes a usurious loan and
the statute of the state where the bank is located declares
that the lender in such case should forfeit all interest, credit
must be given for all the interest which has been paid on
the contract. This court, likewise, without considering the
point whether national banks are amenable to state laws
relating to usury, has applied the interest paid on a loan
of money tainted with the vice of usury as an offset

against the principal of the note. (*Exeter Nat. Bank v. Orchard*, 39 Neb., 485; *Hall v. First Nat. Bank of Fairfield*, 30 Neb., 99.)    Now our attention has been challenged to the fact that the supreme court of the United States has announced a contrary doctrine.    Mr. Justice Swayne, in delivering the opinion of the court in *Farmers & Mechanics Nat. Bank v. Dearing*, 1 Otto, 29, in construing the provisions of section 5198 of the Revised Statutes of the United States, uses this language: "The national banks, organized under the act, are instruments designed to be used to aid the government in the administration of an important branch of the public service.    They are means appropriate to that end.    Of the degree of the necessity which existed for creating them, congress is the sole judge. Being such means, brought into existence for this purpose, and intended to be so employed, the states can exercise no control over them, nor in anywise affect their operation, except in so far as congress may see proper to permit. *  *  *    The power to create carries with it the power to preserve.    The latter is a corollary from the former.    The principle announced in the authorities cited is indispensable to the efficiency, the independence, and indeed to the beneficial existence of the general government, otherwise it would be liable in the discharge of its most important trusts to be annoyed and thwarted by the will or caprice of every state in the Union.    Infinite confusion would follow. The government would be reduced to a pitiable condition of weakness.    The form might remain, but the vital essence would have departed.    In the complex system of polity which obtains in this country the powers of government may be divided into four classes: Those which belong exclusively to the states; those which belong exclusively to the national government; those which may be exercised concurrently and independently by both; and those which may be exercised by the states, but only with the consent, express or implied, of congress.    Whenever the will of the

nation intervenes exclusively in this class of cases, the authority of the state retires and lies in abeyance until a proper occasion for its exercise shall recur. * * * It must always be borne in mind that the constitution of the United States, 'and the laws which shall be made in pursuance thereof,' are 'the supreme law of the land' (Const., art: 6), and that this law is as much a part of the law of each state, and as binding upon its authorities and people, as its own local constitution and laws. In any view that can be taken of the thirtieth section [Revised Statutes, 5198] the power to supplement it by state legislation is conferred neither expressly nor by implication. There is nothing which gives support to such a suggestion. There was reason why the rate of interest should be governed by the law of the state where the bank is situated, but there is none why usury should be visited with the forfeiture of the entire debt in one state, and with no penal consequence whatever in another. This, we think, would be unreason, and contrary to the manifest intent of congress." In the case from which the above quotation was taken it was held that a national bank is not liable to the penalties imposed by the usury laws of a state, reversing the decision of the court of appeal of the state of New York upon that question. The case in 1 Otto was reaffirmed in *Barnett v. Second Nat. Bank of Cincinnati,* 8 Otto [U. S.], 555; *Driesbach v. Second Nat. Bank of Wilkes Barre,* 14 Otto [U. S.], 52, and *Stephens v. Monongahela Bank,* 111 U. S., 197, the court in these several cases holding that in an action by the bank on a note given as a renewal of a usurious loan, usurious interest paid thereon could not be applied to the discharge of the principal debt. The same doctrine has been held by other courts. (*Farmers & Mechanics Bank of Mercer v. Hoagland,* 7 Fed. Rep., 159; *Central Nat. Bank v. Pratt,* 115 Mass., 539; *Davis v. Randall,* 115 Mass., 547; *Higley v. First Nat. Bank of Beverly,* 26 O. St., 75; *Huggins v. Citizens Nat. Bank of Kansas City,* 24

S. W. Rep. [Tex.], 926; *Rockwell v. Farmers Nat. Bank of Longmont*, 36 Pac. Rep. [Colo.], 905.)

It is insisted by counsel for defendants in error that congress, by the removal act of March 3, 1887, as corrected by the act of August 13, 1888, has subjected national banks to the laws of the respective states where they are located, so far as remedies are provided for the wrongs they may perpetrate. In the first subdivision of the act mentioned above it is provided: "That all national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the states in which they are respectively located." This language cannot be construed as making national banks liable to the penalties fixed by a state for exacting unlawful interest. The object and purpose of congress was to prevent the removal from the state to the federal courts of causes in which national banks are parties.

Whatever may be our own views of the question under consideration, we feel bound to keep in line with the decisions of the highest court of the land—the supreme court of the United States—upon all matters of which it is the final arbiter. It follows that the district court erred in allowing the plaintiffs below to offset against the three notes set up in the answer the amount paid the bank as interest on the usurious transactions. For the error pointed out, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.