JAMES GADSDEN, APPELLANT, V. GEORGE THRUSH, APPELLANT, AND SCHUYLER NATIONAL BANK ET AL., APPELLEES.

FILED MARCH 22, 1899. No. 8315.

1. **Usury:** NATIONAL BANKS. The exemption of national banks from the penalties of usury prescribed by statute of the state owes its existence to laws enacted by congress, and such exemption should not, by implication, be extended beyond the import of the federal statute.

2. ———: ———: MORTGAGES. In an action to foreclose a mortgage securing a note made to be used as collateral to a note owing to a national bank the mere fact that the proceeds of such collateral, when collected by the payee thereof, are to be used to discharge the said principal note to the bank does not justify the extension of the federal exemption of national banks from penalties for usury to such foreclosure proceedings.

REHEARING of case reported in 56 Neb. 565. *Judgment below reversed.*

*Frick & Dolezal*, for appellants.

*Charles J. Phelps, George H. Thomas, J. A. Grimison*, and *Miles Zentmeyer, contra.*

RYAN, C.

In this case a rehearing was granted the appellees William H. Sumner and the Schuyler National Bank. The opinion originally filed is reported in 56 Neb. 565, and therein will be found a general description of the relation of the parties and the pleadings filed by each. The present inquiry is with relation to the issues under which Sumner and the Schuyler National Bank seek relief, and accordingly we shall confine ourselves to the pleadings wherewith these parties are concerned. In his cross-petition William H. Sumner alleged that on August 8, 1890, the defendants George Thrush and Charles Thrush were indebted to the Schuyler National Bank in the sum of $5,000, evidenced by their promissory note to said bank; that said note was renewed from time to time, and on March 31, 1894, there remained due the sum of $3,229, for which amount George Thrush gave his promissory note to the bank, due 180 days after its date, and that no part of this note had been paid. It was further alleged by Sumner that on August 8, 1890, George Thrush and Mattie Thrush executed to him their promissory note for the sum of $5,000, due two years after date, with ten per cent interest per annum, payable annually, and that to secure the said note the makers of said note made a mortgage on certain described real property, which said mortgage was duly filed for record. In his said cross-petition William H. Sumner made the following averments: "This defendant further alleges that the note and mortgage so as aforesaid executed and delivered by the defendants

George Thrush and Mattie Thrush were executed and delivered to him as trustee for the use and benefit of the Schuyler National Bank and to secure the indebtedness of said Thrush to said bank; that said debt so secured on the 8th day of August, 1890, by said mortgage deed was a debt previously contracted; that said mortgage was made in good faith and in the name of this defendant for the benefit of said Schuyler, National Bank. No proceedings at law have been had for the recovery of the debt secured by said mortgage, or any part thereof, and there is now due from the defendants George Thrush and Mattie N. Thrush to this defendant, for the use and benefit of the Schuyler National Bank, the sum of $3,229 and interest at ten per cent from September 27, 1894." The prayer of the petition of Sumner was that an account might be taken of the amount due on said note and mortgage; that the priority of liens might be determined and the lien of other defendants declared inferior to that of Sumner, and that said George Thrush and Mattie N. Thrush might be foreclosed of all equity of redemption or other interest in the premises mortgaged; that said premises might be sold according to law, and out of the proceeds thereof that the lien-holders might be paid the amount adjudged to be due them in the order of their priority; that the defendants George Thrush and Mattie Thrush might be adjudged to pay any deficiency which might remain after applying the proceeds of said sale to the payment of said debts, and for such other relief as might be just and equitable. Later the Schuyler National Bank was allowed to become a party to the litigation, and filed a cross-petition alleging substantially the same facts, and, on behalf of itself and Sumner, praying like relief with that above described as the prayer of Sumner. The defendants George Thrush and Mattie N. Thrush, in separate answers, admitted the making of the promissory note for $5,000 and of the mortgage securing the same on August 8, 1890, but denied every other allegation of the petition of Sumner. In addition they

averred that said note and mortgage were made to Sumner as part of a usurious transaction; that the same were held by Sumner as collateral security to usurious loans from time to time renewed at usurious rates, as in the answer more particularly described.   Each successive usurious loan at twelve per cent per annum interest was described in a distinct paragraph, and these paragraphs were twenty-four in number.   The first paragraph described a loan on August 9, 1889, and the twenty-fourth paragraph described the history of the note of $3,229, of date March 31, 1894.   There was, therefore, a continuous chain of usurious transactions extending over the entire period between August 9, 1889 and March 31, 1894, and the relief sought was the application of the payments of interest on the sum in satisfaction of which the foreclosure was prayed.   By reply Sumner denied the averments of the eleventh paragraph of the answer of each of the defendants Thrush, and the other paragraphs of his reply, substituting the appropriate figures to express the proper number referred to in each instance, were as follows: "That the interest payment mentioned in paragraph 10 of said answer was made to the Schuyler National Bank more than two years before the commencement of this action, and the consideration thereof in this action is barred by law."   The reply of Sumner closed with this language: "He further says this court has no jurisdiction in this action to consider the questions raised in said answer as to each and every item of interest mentioned in said answer as paid to said Schuyler National Bank; that said items are not proper items to set-off or counterclaim, and cannot be adjudicated except in a suit brought expressly for that purpose under the provisions of section 5198 of the Revised Statutes of the United States."   On the trial there was a decree of foreclosure, in which there was a finding of usury in the note of $3,229 to the amount of $229, and the defendants George Thrush and Mattie N. Thrush were denied their costs; in other words, the district court held that the statute of limitations and costs

were governed by the federal statute relating to national banks, and not by section 5, chapter 44, of the Compiled Statutes of Nebraska. The correctness of this ruling is the question presented by this appeal.

In the former opinion it was pointed out that the taking of real estate security for the loan of money constitutes no defense to a foreclosure; hence the citation of authorities on behalf of the bank to that proposition was not necessary. It was further pointed out in that opinion that the government might complain, and upon this proposition it is noticeable that the bank has cited no authorities and has made no argument. There was, in view of the last consideration named, an incentive to the bank to take the security upon real property as it did in this instance, so that it might appear upon the face of the note and mortgage that the bank originally had not been a party thereto, if the governmental authorities should insist upon a strict compliance with the provisions of the federal statute forbidding the taking of a real estate mortgage except in certain cases, in which that under consideration is not included. In *Norfolk Nat. Bank v. Schwenk*, 46 Neb. 381, NORVAL, C. J., quoted as of binding force upon this court the following language of Swayne, J., in *Farmers & Merchants Nat. Bank v. Dearing*, 1 Otto [U. S.] 29: "The national banks organized under the act are instruments designed to be used to aid the government in the administration of an important branch of the public service. They are means appropriate to that end. Of the degree of the necessity which existed for creating them, congress is the sole judge. Being such means, brought into existence for this purpose, and intended to be so employed, the states can exercise no control over them, nor in anywise affect their operation, except in so far as congress may see proper to permit. * * * In the complex system of polity which obtains in this country the powers of government may be divided into four classes: Those which belong exclusively to the states; those which belong exclusively

to the national government; those which may be ex-
ercised concurrently and independently by both; and
those which may be exercised by the states, but only with
the consent, express or implied, of congress. Whenever
the will of the nation intervenes exclusively in this class
of cases, the authority of the state retires and lies in
abeyance until a proper occasion for its exercise shall
recur. * * * It must always be borne in mind that the
constitution of the United States 'and the laws which
shall be made in pursuance thereof' are 'the supreme law
of the land' (Constitution, art. 6), and that this law is as
much a part of the law of each state, and as binding upon
its authorities and people, as its own local constitution
and laws. In any view that can be taken of the thirtieth
section [Revised Statutes, 5198] the power to supplement
it by state legislation is conferred neither expressly nor
by implication. There is nothing which gives support
to such a suggestion. There was reason why the rate of
interest should be governed by the law of the state where
the bank is situated, but there is none why usury should
be visited with the forfeiture of the entire debt in one
state and with no penal consequence whatever in an-
other. This, we think, would be unreason, and contrary
to the manifest intent of congress." Conformably with
the doctrine above announced it was held in *Norfolk Nat.
Bank v. Schwenk, supra,* that a national bank is not liable
to the penalties imposed by the usury laws of the state.
We are now asked to go a step further and hold, in a suit
to foreclose a mortgage securing a note made to, and held
by, an individual in trust for the payment of a note owing
to the bank, that the provisions of section 5198, Revised
Statutes, are applicable, to the exclusion of the statute
of this state with reference to usury. The cross-petition
of Sumner, in effect, was for the foreclosure of a mort-
gage of which the proceeds were to be applied in payment
of a note made to the bank. The principal note was not
sued upon. It was referred to only as showing how much
was required to be realized in the foreclosure suit. The

answers of each of the defendants Thrush showed that by reason of usury but little, if anything, was required to be realized from the foreclosure proceedings to satisfy what was due from George Thrush to the bank. It was not a suit, in any sense, upon the note which George Thrush had given the bank. That was his individual note. The note secured by mortgage was signed by Mattie N. Thrush, who owed nothing to the bank. She did not merely sign the mortgage to release her dower right, but she signed the note as one of its makers. In case of a deficiency by sale of the mortgaged property, she was individually liable, as it is now claimed, not to Sumner, but to the Schuyler National Bank, to which she was not indebted and had never agreed to pay a single cent. To her answer setting up payments of usurious interest which would release her from individual liability there was a reply, which, in effect, conceded the usury charged to have been contracted for and exacted in twenty-three instances, but sought to avoid the credits, to which, under the state law, she would have been entitled, by invoking the federal statute enacted for the protection of national banks as governmental instrumentalities. It is provided in section 5, chapter 44, Compiled Statutes of Nebraska: "If a greater rate of interest than is hereinbefore allowed shall be contracted for, received, or reserved, the contract shall not therefore be void; but if, in any action on such contract, proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the plaintiff shall only recover the principal, without interest, and the defendant shall recover costs; and if interest shall have been paid thereon, judgment shall be for the principal, deducting interest paid." Sumner himself put in issue the amount which he was entitled to collect for the payment of the note made by George Thrush to the bank. By the answers and replies there was alleged, and practically admitted, the right to credits by reason of payments of usury by George Thrush on his indebtedness to the bank. It is now in-

sisted, however, that the trustees should stand for the
bank and, in equity, that he is entitled to the same rights
and exemptions from liabilities as are conferred by fed-
eral statute upon the governmental instrument referred
to by Judge Swayne in *Farmers & Merchants Nat. Bank v.
Dearing, supra.* There is no just reason for resorting to
strained constructions to avoid the penalties of the stat-
ute of this state. As between these litigants we are not
measuring equities. The withdrawal of this case from
the operation of our statute, as indicated by Judge
Swayne, must be sanctioned by some express provision
of the federal statute. Section 5198, Revised Statutes
of the United States, contains the following language:
"The taking, receiving, reserving, or charging a rate of
interest greater than is allowed by the preceding section,
when knowingly done, shall be deemed a forfeiture of
the entire interest which the note, bill, or other evidence
of debt carries with it, or which has been agreed to be
paid thereon. In case the greater rate of interest has been
paid, the person by whom it has been paid, or his legal
representatives, may recover back, in an action in the
nature of an action of debt, twice the amount of the in-
terest thus paid, from the association taking or receiving
the same, provided such action is commenced within two
years from the time the usurious transaction occurred."
Under the above section the forfeiture of the entire in-
terest is of that which the note, bill, or other evidence of
debt sued upon carries with it or which has been agreed
to be paid thereon. In the case at bar the recovery by
foreclosure was sought upon the note given by George
and Mattie N. Thrush to William H. Sumner. There was
no issue of usury on that note. It was concededly held by
Sumner for a certain purpose,—that is, to be collected
and the proceeds paid over on a note greatly reduced, if
not discharged. To the foreclosure proceedings by Sum-
ner, in which the bank joined, the federal statute was
inapplicable, first, for the reason that the note secured
by mortgage was not the note upon which usurious in-

terest was agreed to be paid, and second, the note and mortgage are held by Sumner and a foreclosure is sought by him. The bank, when it became a party, simply urged that the same relief prayed by Sumner should be granted. The rule is that the state statutes govern proceedings in the courts of the state, unless the federal statute with reference to a proper subject-matter prescribes a modification. It may be conceded that the interests of the general government require that it should take special care of national banks, but the federal government must, by clear provisions, assert its authority. There is no good reason why state courts should extend the operation of statutes affecting merely the remedy beyond the clear import of the language of congress, and there is no precedent for this that we have been able to find. If the bank had been one organized in the state of Illinois, Sumner would not have been permitted to commence his action of foreclosure in a federal court upon showing the conditions disclosed by the record in this case. No citation of authorities is necessary to demonstrate this proposition, and the reason of the rule is that the federal statute prescribes what parties have a standing to begin suits in the federal courts, and none other can. There is no enlargement of rights possible upon mere equitable grounds in such cases, and there should not be in this. For the reasons given we think the former opinion should be adhered to, and the order therein prescribed should govern the further proceedings in this case.

REVERSED AND REMANDED.