CENTRAL NATIONAL BANK *vs.* JOSEPH PRATT.

Suffolk. March 9. — September 10, 1874. COLT & ENDICOTT, JJ., absent.

It is within the constitutional power of Congress to fix the rate of interest which a national bank may take upon a loan of money and to determine the penalty to be imposed for taking a greater rate, and such power when exercised by Congress is exclusive of state legislation.

The provision of the U. S. St. of 1864, *c.* 106, § 30, limiting the forfeiture for the making usurious charges by national banks to the interest, applies as well to banks established in states where a rate of interest is fixed by law, as to banks in states where no rate is fixed.

The laws of New York imposing penalties for taking usury do not apply to national banks established within the limits of that state.

CONTRACT by a national bank organized under the national banking acts of the United States, and having its place of business in the city of New York, against the indorser of a bill of exchange drawn by Joseph M. Strong of New York upon Matt Ellis of Boston, payable to the order of the defendant, and by him indorsed to the plaintiff, and accepted by Ellis. Trial in the Superior Court, before *Devens*, J., who reserved the case for the consideration of this court on the following report :

" The bill of exchange was discounted by the plaintiff in New York on the day of its date, upon presentation for discount by said Strong. It was agreed by the defendant at the trial that the

plaintiff was entitled to recover, unless the plaintiff took or reserved a greater rate of interest for discounting said bill than seven per centum per annum, and unless the bill of exchange was void by virtue of the laws of the State of New York against usury. The defendant's answer set up that in discounting the bill of exchange, the plaintiff lent to the drawer a sum of money for which it received usurious interest contrary to the laws of New York, and that by so doing the bill of exchange was void.

" The plaintiff contended that the laws of New York against usury were controlled by the national banking acts, and that the bill of exchange sued upon would not be void even if usurious interest had been reserved or taken by the plaintiff in discounting said bill; and this question is reserved, at the request of both parties, for determination by the Supreme Judicial Court. If the court shall hold that such usury does not render the bill of exchange void, then judgment is to be rendered for the plaintiff; if such usury does render the bill of exchange void, the case is to stand for trial in the Superior Court."

*D. E. Ware & J. T. Morse, Jr.*, for the plaintiff.

*E. Avery & R. C. Lincoln*, for the defendant. 1. The question whether the effect of usury is a forfeiture of the whole debt or bill, under the law of the State of New York, or of the interest merely, under United States law, depends upon the construction and operation of the U. S. St. of 1864, *c.* 106, § 30. It is contended for the defendant that the consistent and correct construction of this section leaves the case to be governed by the New York usury laws; and further, that if its operation were such as to supersede the state law, it would be unconstitutional. This is the ground taken by the New York Court of Appeals, in a case like the present one. *First National Bank of Whitehall* v. *Lamb*, 50 N. Y. 95. See also *In re Wild*, 11 Blatchf. 243. But, independently of that case, the question may admit of a further consideration. It is submitted that any provision of the banking act which is not necessary, *i. e.* conducive or useful to the end proposed by the act, especially if in conflict with a state law upon the same subject, is unconstitutional, and that the provision concerning forfeiture, if connected with the first paragraph of § 30, is, so far, unnecessary and incongruous. That construction, therefore, which avoids such result (as the structure of the

section admits equally of two interpretations) may properly be considered the better expression of the intention of the framers. It is, then, contended for the defendant, that the enactment of a forfeiture and penalty for usurious loans and discounts in all the states, is unnecessary. It is manifest from the general tenor of the act, and from § 30 itself, that the sole purpose therein was to establish banks of issue, to provide for the circulation of a national currency, and to legislate for the other functions of a bank, discount and deposit, only so far as such legislation was "necessary and proper" to carry out that sole purpose. The banks must be protected in the lawful exercise of their powers; but is it therefore necessary and proper for carrying into execution these powers that Congress should prescribe punishment for an exercise of such powers, arising in purely private dealings, which may be unlawful merely because so ordained by state laws, unless such illegal acts hinder the usefulness of the banks in accomplishing the purpose for which they were established? It is submitted that the ordaining a rate of interest on loans and discounts, and, at all events, a punishment for taking a greater than the fixed rate, is not necessary or appropriate to promote the sole purpose for which these national banks were established, — the circulation of a national currency. In some states there are no usury laws, and yet the usefulness of these banks has not been impaired. Usury laws are made solely for the benefit and protection of trade and the community, and not of the banks. And inasmuch as Congress evidently favored the existence of usury laws, the forfeiture for which the national banking act has provided may well be explained as enacted for the purpose of protecting the public from any oppressive dealings of these United States agents in those states where there are no usury laws. In other states, Congress has expressly left this protection to be afforded by the legislatures of the states themselves. A further explanation of this provision with regard to forfeiture may be that, since without it a note discounted by a bank, at more than seven per cent., in a state where no rate is fixed, would be void, under the common law, its purpose is also to modify the common law in those states where it has not already been changed by state enactment.

It is also contended that this provision, if made to apply to usurious loans and discounts in all the states, is, so far, incongru-

ous.   The utility of usury laws is a matter which each state has determined for itself ; and if it does not militate against the purpose of the creation of these national banks, that state law should determine the rate of interest on their loans and discounts, how can it operate against this purpose, that state law should determine the penalty or forfeiture ?   Certainly, the power that establishes the maximum rate of interest which can legally be charged or taken, is the proper power to ordain the penalty or forfeiture which is to compel observance of the law.   Therefore it is urged, that Congress is not to be supposed to have meditated or done so incongruous a thing, as to impose a penalty for the violation of a state law.   The penalty of the section is not cumulative, there is no concurrent power in this matter between the States and the United States ; and the first paragraph of the section is declaratory merely, and not a reënactment of the various state laws upon the subject of interest.   The last amendment agreed to in the House of Representatives was, that " each bank should be bound by the state law regulating interest in the state where it should be located ; " and such is manifestly the meaning and design of the section in its present form.

2. If any enactment of Congress, under an implied power, being in direct conflict with the laws and unsurrendered powers of the states, is not necessary or conducive to the end proposed, the state law is not to yield, but the enactment is unjustifiable and unconstitutional.   In *National Bank* v. *Commonwealth*, 9 Wall. 353, 362, the court say of the banks of the United States : " They are subject to the laws of the state, and are governed in their daily course of business far more by the laws of the state than of the nation.   All their contracts are governed and construed by state laws.   Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts are all based upon state law.   It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional."   It would certainly seem, then, that any qualification of that right should be made, and the effect of any invalidity of their contracts in the acquisition of property should be determined, by state law.

3. It is manifest that a uniform rate of interest for the whole country, as was established by the bank acts of 1791 and 1816,

was not considered by Congress essential to the purpose for which the present national banks have been established, although the incidental function of lending money was so considered. How then is a uniform penalty for violations of diverse state laws necessary or conducive to such purpose ? In the bank act of 1816, the entire provision is, that the Bank of the United States shall not take more than at the rate of six per cent. upon its loans or discounts, not adding any penalty. In the case of the *Bank of the United States* v. *Owens*, 2 Pet. 527, 538, the legal effect of this provision was held to be, to make void a note discounted in Kentucky at a rate of interest greater than six per cent., by force of the common law. But the *S. C. nom. Bank of United States* v. *Waggener*, 9 Pet. 378, was decided with reference to the usury act of the State of Kentucky. The penalty of the state usury act was applied to a contract which violated the above provision of the United States bank act, and " the court made the case turn exclusively upon the question of usury, precisely as if the note had been given to an individual." See the *Commercial Bank of Manchester* v. *Nolan*, 7 How. Miss. 508. Much more, then, should the penalty fixed by a state law apply to a contract usurious only because violating a provision of that state law.

MORTON, J.   The thirtieth section of the act to provide a national currency is as follows : " Every association may take, receive, reserve and charge on any loan or discount made, or upon any note, bill of exchange or other evidences of debt, interest at the rate allowed by the laws of the state or territory where the bank is located, and no more, except that where by the laws of any state a different rate is limited for banks of issue organized under state laws, the rate so limited shall be allowed for associations organized in any such state under this act. And when no rate is fixed by the laws of the state or territory, the bank may take, receive, reserve or charge a rate not exceeding seven per centum, and such interest may be taken in advance reckoning the days for which the note, bill or other evidence of debt has to run. And the knowingly taking, receiving, reserving or charging a rate of interest greater than aforesaid, shall be held and adjudged a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. And in case a greater rate of interest has been paid,

the person or persons paying the same, or their legal representatives, may recover back, in any action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: Provided that such action is commenced within two years from the time the usurious transaction occurred. But the purchase, discount or sale of a *bonâ fide* bill of exchange, payable at another place than the place of such purchase, discount or sale, at not more than the current rate of exchange for sight drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest." U. S. St. 1864, *c.* 106, § 30.

The first question in this case is as to the true construction of this section. The defendant contends that in the provision that " the knowingly taking, receiving, reserving or charging a rate of interest greater than aforesaid, shall be held and adjudged a forfeiture of the entire interest," the word " aforesaid " refers only to the rate established by the paragraph immediately preceding, " when no rate is fixed by the laws of the state or territory." If this be so, then the act of Congress provides no penalty for taking usurious interest when the rate of interest is fixed by the laws of the state or territory where the bank is located, and the defendant contends that the penalty is to be determined by the laws of the state. On the other hand if the true construction of the statute is, that the penalty therein provided applies uniformly to all banks which take more than a legal rate of interest, it is clear that it supersedes the state law so far as repugnant to it. It cannot be contended that Congress intended to expose banks located in states wherein the rate of interest is fixed by law, to a double penalty; but if the act imposes a uniform penalty upon all banks, this excludes the power of the states to legislate upon the same subject, and annuls or renders inoperative the state laws in their application to banks established under the act.

In construing statutes it is to be assumed that the framers intended the meaning which the words used naturally convey to the reader. And this rule determines the construction unless there be found something in the context, or in the nature and relations of the subject matter, which clearly shows a different intention. In the act in question it seems clear to us that, by the natural and obvious meaning of the language, the penalty of a forfeiture of the entire interest applies to all cases where a rate of interest

is charged by any bank greater than the rate which the bank is authorized to take by the previous provisions of the section. The expression " a rate of interest greater than aforesaid " refers as well to the rate established by adopting the rate allowed by the laws of the states or territories, as to the rate fixed at seven per cent. if no rate is fixed by such laws. There is no rule of grammatical construction which limits its reference to the paragraph immediately preceding. We think, in view of the whole act, that the policy of Congress clearly was to keep within its own control the penalties to be imposed upon the banks for violating the provisions of the act. This view is confirmed by the history of the legislation upon this subject. The original currency act, of February 25, 1863, of which the act of 1864 is a revision and amendment, provided that every association might charge such rate of interest as was the established rate in the state where it was located, and that the charging a greater rate should be held a forfeiture of the debt, thus making the rate conform to the laws of the state, but establishing a fixed and uniform penalty for a violation of the act, and showing that it was the policy of the legislation upon this subject to keep the matter of the penalties to be imposed upon the banks for usurious transactions within the control of Congress.

It seems to us therefore, that considering the natural meaning of the language, the context, and the history of legislation, by the only reasonable interpretation of this section, a bank located in a state wherein the rate of interest is fixed by its laws, which takes a greater rate of interest, is subject to the penalty of a forfeiture of the entire interest provided by the act, and is not subject to a greater or different penalty provided by the state laws against usury.

The defendant also contends that the provision, thus construed, exceeds the constitutional powers of Congress, and is invalid.

It is settled, as a judicial question, that the Constitution confers upon Congress the power to establish a bank or a system of banks, as necessary instrumentalities for executing the powers expressly given it and performing the duties imposed upon it. This was decided by the Supreme Court of the United States in 1819, in the case of *M'Culloch* v. *Maryland*, 4 Wheat. 316. Chief Justice Marshall, in delivering the opinion of the court,

puts the case upon the ground that a national bank was a convenient, useful and essential instrument in the prosecution of the fiscal operations of the government.

In the later case of *Osborn* v. *United States Bank*, 9 Wheat. 738, 859, the question was reconsidered, and the doctrine reaffirmed, that a national bank was an instrument which was necessary and proper for carrying into effect the powers vested in the government; that Congress had the power to create a bank for national purposes and to endow it with such faculties and functions as were necessary to enable it to effect its object, and that among these is the faculty of lending and dealing in money.

The precise question in these cases was as to the right of a state to tax the national bank, but the principles upon which this question was decided are decisive of the case at bar.

The power of the government to create a bank is supreme; from its nature it includes the power to endow it with all such faculties as are appropriate to accomplish its object. It is clear, as stated in *Osborn* v. *United States Bank, supra,* that the faculty of lending and dealing in money is an appropriate and necessary faculty for a bank, and that without it the bank would want the capacity to perform its public functions in the most efficient manner. The rate of interest to be charged for the use of money is a necessary incident of a loan, and the power in Congress to authorize a bank to lend money involves the power to fix the rate of interest and the penalty for taking a greater rate. If a state may fix the rate of interest, it may practically destroy this faculty of the bank. The power to create a bank includes the power to fix the limitations within which it may exercise its functions and faculties, and to determine the causes for which and the manner in which it may be destroyed. This power vested in Congress is inconsistent with a power in any state or territory to affix penalties upon the bank for taking unlawful interest, or for any other violation of the act of Congress. We are of opinion that it was within the constitutional power of Congress to fix the rate of interest which a national bank might take upon a loan of money, and to determine the penalty to be imposed for taking a greater rate; that such power, when exercised by Congress, is exclusive of state legislation; that the provision of the thirtieth section of the act of Congress we are considering, imposing a penalty for

taking unlawful interest, applies as well to banks established in states where a rate of interest is fixed by law, as to banks in states where no rate is fixed, and therefore that the laws of New York imposing penalties for taking usury do not apply to national banks established within its limits. The Supreme Court of Ohio has taken the same view of the constitutionality and construction of the statute which we entertain. *First National Bank of Columbus* v. *Garlinghouse*, 22 Ohio St. 492. We are aware that the Court of Appeals of New York has decided differently upon both points. *First National Bank of Whitehall* v. *Lamb*, 50 N. Y. 95. But, notwithstanding the great respect we have for that eminent tribunal, we are unable to concur in the conclusions it reached. *Judgment for plaintiff.*