Cleghorn *vs.* Greeson.

---

CLEGHORN *vs.* GREESON.

<div style="float:right">

| 77 | 343 |
|----|-----|
| 97 | 282 |
| 77 | 343 |
| 102 | 768 |
| 77 | 343 |
| a112 | 235 |

</div>

A waiver of the right of homestead and exemption, made as a part of a usurious contract, is void; and although a note bearing a usurious rate of interest contained a full and general waiver of the right to homestead and exemption for the debtor, and was subsequently reduced to judgment, the execution issued thereon could not be collected out of property exempted under section 2040 of the code.

(*a.*) The invalidity of such a waiver is not changed by the constitutional allowance of general waivers of homesteads contained in §§5212, 5214 of the code, or by the change in the penalty prescribed for the charging of usury since the decision in 63 *Ga.* 31.

(*b.*) There is nothing which militates against this view in Code, §§2057(a) to 2057(g), nor in 72 *Ga.* 807, 811, 812.

December 21, 1886.

Homestead. Waiver. Interest and Usury. Contracts. Before Judge HUTCHINS. Chattooga Superior Court. March Adjourned Term, 1886.

John S. Cleghorn brought suit in Chattooga county court against Henry Greeson on the following note :

"One day after date, I promise to pay John S. Cleghorn, or bearer, fifty-five and $\frac{81}{100}$ dollars, for value received, with interest at ten per cent. per annum. And I hereby, for myself, wife, heirs, executors, administrators and next of kin, waive and renounce all right to homestead or exemption under any laws of Georgia as against this note; and in case this note is sued, I agree to pay cost of collection, including ten per cent. attorney's fees."

On April 14, 1885, he recovered judgment thereon. Execution issued for the principal, interest to date and attorney's fees and for interest at ten per cent. per annum on the principal sum. On November 10, the *fi. fa.* was levied on certain personal property, including a mule. On November 14, Greeson applied for and obtained an exemption under §2040 *et seq.* of the code, the mule being part thereof. On January 25, 1886, he interposed a claim to the mule as exempted property not subject to sale under the *fi. fa.* The case was appealed to the superior court by agreement, and was submitted to the presiding judge without a jury. He held that the property was not subject, and the plaintiff excepted.

W. M. HENRY, for plaintiff in error.

No appearance for defendant.

JACKSON, Chief Justice.

The sole question made in this record is, whether a note bearing usurious interest, and upon which judgment was rendered and execution issued, with a full and general waiver of the right to homestead and exemption, " under any laws of Georgia as against this note," can be collected out of a mule exempted under section 2040 of the code.

The note was dated May 1st, 1883, and was due one day after date, and no defence, on the ground of usury or otherwise, was made to it, but judgment was rendered upon it

for principal and interest at ten per cent. that the note bore on its face.

In the case of *Tribble et al. vs. Anderson*, in 63 *Ga.* 31, in syllabus 3, it is decided by a unanimous court that "homestead is favored by the law and usury is noxious to the law. For reasons of public policy, no waiver of homestead can be effectual where the consideration has any taint of usury."

In the body of the opinion, on pages 54 and 55, it is said that, "As to the waiver of homestead which the instrument contains, that is not needed by Anderson for his protection if the debt was untainted, or if being tainted it was purged. If he is in a situation to need it, he can take no benefit from it; for while the waiver of homestead is not a conveyance, it is enough in the nature of a quit-claim title to be subject to the general rule ordained by statute against passing any kind of title to property for a usurious purpose or as part of a usurious contract. The homestead right is a right in property, and to waive it in favor of a creditor is substantially the same thing as to convey it away; the same, certainly, in respect to putting the debtor in the power of the creditor. And it is, we apprehend, to keep the debtor out of the power of the creditor, so as to give due scope to the plea of usury if the former should at any time feel inclined to use it, that the rule against connecting title with usury has been adopted. The waiver of homestead is within the reason and spirit of the statute, because there would be little difference to the debtor and his family between allowing the usurer to acquire title to his property to secure a usurious debt, and allowing the usurer to acquire a lien upon it with a waiver of homestead for the same purpose. In either case, the property, if only of equal value with the amount of the debt, and sometimes though of much greater value, would be gone sooner or later if the debt was not paid. Perhaps we need not directly invoke the statute, either in its letter or spirit, to reach the result at which we have arrived; for the un-

doubted policy of the law is to discourage and repress usury; usury is odious to the law, while homestead is favored by the law. The one is an outcast and reprobate, the other a fostered institution of the State. Usurious contracts are regarded as corrupt and tainted, and the usurer is, so far, a trampler upon the very law to which he looks for protection. If he will violate the law for the purpose of gain, shall he at the same time clutch his debtor's homestead right as security for his principal and lawful interest? Shall he have the same security for these when he breaks the law, as other creditors have who keep the law? Because the homestead right can be waived in a pure contract, does it follow that it can be waived in a contaminated contract? We think not, and so rule. It is contrary to public policy to bind the homestead right as security for an usurious debt; the taint of usury affects the security and renders it void."

The reasoning is clear, the argument irresistible, the decision without the slightest misgiving. It must be followed in every case which the principle it establishes covers.

It is argued that the usury laws have been changed since. The decision was made at the February term, 1879. The taint to title by the dye of usury is as deep now as then. The statute is still as then, and for years before that, "all titles to property made as a part of an usurious contract, or to evade the laws against usury, are void." · Code, §2757(f).

It is also argued that the homestead and exemption laws, with the power to waive those rights, have been also changed. It is true the waiver privilege or power has been enlarged and extended, but it was then, in respect to that particular homestead then before the court, just as complete and unrestricted as it is now. It is immaterial that it is now a part of the organic law of the constitution of the State, and was then the creature of statute or of judicial construction. The power of the legislative enactment

and of the judicial construction flows from the constitution, and is as strong as if part of that instrument, until repealed by competent authority. Each may be repealed by its own immediate master, and changed in the same way. The organic law of the constitution provides for changes in itself in ways prescribed by itself. The statutory law is altered, too, by the body that made it, and judicial construction by the authority of the legislature, or by the judges who made it. All base their respective powers at last in the will of the people that make all. The constitution first; then, under it and deriving life from it, the legislative authority, and then the construction of the legislative acts by a unanimous Supreme Court, which, until repealed; the one by another legislature, and the other by a reviewing court, with the same unanimity that made the construction the law. The binding force while in life is equal, whether the law be organic, or legislative, or judicial. The right to waive homestead given by the constitution must be obeyed; so must that given by the legislative will; and with no less subjection to authority must that which judicial decision makes be upheld and obeyed.

It follows that the old waiver, with narrower compass, that sprung from the judiciary, is as complete within its compass as that which now has broader compass by the constitution. The only difference is that the old right was narrower than the new right. Both spring from the constitution. The one is part of itself—the other its own offspring. The constitution allows general waiver in addition to the special waiver that the court allowed under the old law. It may now cover all a man has, except a fraction of the homestead and exemption allowed by section 2040 of the code, commonly called "the pony homestead." But it can no more secure an illegal contract, though covering all of the debtor's property, than it could have done when the property must have been specified. If waived to secure a gaming debt, or a debt for futures, or a debt illegal because against public policy, or void for

fraud, or otherwise illegal, the waiver would be just as void, though a general waiver granted by constitutional enactment, as it would have been when specific under judicial construction, unless the constitution that granted it declared that it should secure such illegal debts.    It is hardly within the range of possibility that the constitution would make such a declaration.  It is not probable that its makers would legalize gambling contracts by making them secure by waiver of the homestead of the poor.    It is as improbable that its makers would legalize usurious contracts to the extent of permitting them to sweep the homestead of a poor family.    To hold that the constitution does so by implication would shock the moral sense that, like the Bible, anathematizes him who grinds the face of the poor.    Sections 5212 and 5214 of the code, which contain the 3d and 5th sections of article 9 of the constitution, embrace all the provisions of that instrument touching waiver, and then allow all property set apart to be waived in writing, pony homestead as well as the rest, "except wearing apparel, and not exceeding three hundred dollars' worth of household and kitchen furniture and provisions." There is nothing in either section that legalizes, expressly or by implication, any contract between creditor and debtor not lawful before.

It is insisted, however, by the very able counsel for plaintiff that no penalty or forfeiture is put upon this paper, but only the excess of legal interest cannot be collected, while all the principal and legal interest can be. In other words, he argues that the contract is lawful, so far as principal and legal interest are concerned, and only unlawful as to excess of interest.  This is true so far as the collection of commercial paper or any debt due by contract is concerned, and the principal and legal interest can be collected; but any contract whereby title to property is concerned is inoperative to convey that title.  " All titles to property, made as a part of an usurious contract, or to evade the laws against usury, are void," is

the language of the code in section 2057(f). "All titles to property, all sorts of property, real or personal, made as a part of an usurious contract, are void." It is the title to property that is void by the usury. This waiver waives or vacates the title, the homestead title, it is called by Judge Bleckley, in the 63d *Ga. supra*, a sort of quit-claim title, and the argument there, in that case, is that the waiver is equivalent substantially to a title made by the debtor to the creditor, and takes the homestead or exemption from him and his family just as effectually as if he had given a deed or bill of sale to the property. The deed or bill of sale that conveyed title would have been void beyond doubt. Had it been a quit-claim title to the property, it would have been equally void. What is waiver of title by homestead or exemption papers but a quit-claim by this man and family to the property that title made theirs? This waiver is part of this contract. The usury in it vitiates this quit-claim, called a waiver, and leaves the homestead or exemption unaffected by it, because that part of the contract is void, just as void as is excess of interest in another part of the contract. That excess is forfeited, no matter how it is sought to be collected; this waiver of homestead and exemption, this quit-claim title, is also forfeited whenever the creditor seeks to set it up in order to collect any part of the debt, because the penalty of usury is the forfeiture of all interest over legal interest when sought to be collected anywhere and out of any property of the debtor, and the penalty of usury is also the forfeiture of any sort of title, warranty or quit-claim in any contract where usury is also discovered.

There is not a syllable in the usury statutes, from §2057(a) to 2057(g) in the code, or in *Partridge vs. Williams Sons*, in 72 *Ga.* 807, 811 and 812, that militates against this view, or jostles its granite. The foundation laid in 63d *Ga. supra*, supports the superstructure built here upon it; and as long as that is not undermined by a reversal, this must stand.

Nor do we see more power to overturn this opinion in the idea that the judgment purged the usury. The time to defend the homestead and exemption is always after judgment. It is sacred from levy by the officer, and no levy can be made till execution follows judgment. Then the illegality of the proceeding against the exemption can for the first time be set up and the waiver be proved a nullity to authorize levy and sale because it is part of an usurious contract.

Judgment affirmed.