## FIRST NATIONAL BANK OF DALTON *v.* McENTIRE.

·The penalty imposed by section 5198 of the Revised Statutes of the United States upon national banks for charging usury is exclusive ; the law of this State, that a waiver of homestead when part of an usurious contract is void, imposes a penalty for charging usury, and is, therefore, not applicable to national banks. It follows that a surety who signs a promissory note containing a waiver of homestead and secretly tainted with usury, of which latter fact he had no knowledge at the time of signing, is not discharged from liability, when the note is payable to a national bank, as his risk has not been increased.

Argued October 2, — Decided November 27, 1900.

Complaint on note.   Before Judge Fite.   Murray superior court. August term, 1900.

*C. N. King* and *R. J. & J. McCamy*, for plaintiff.
*J. J. Bates* and *Mann & Terry*, for defendant.

Fish, J.   The First National Bank of Dalton sued four parties as makers, and J. C. McEntire as indorser, upon a promissory note payable to the bank. McEntire alone made any defense. The uncontroverted facts upon the trial were, that McEntire signed the note as a mere accommodation indorser ; that the note contained a waiver of the benefit of the homestead and exemption laws, and that it

was secretly tainted with usury, which fact was unknown to McEntire at the time he signed it.    Upon these facts the court directed a verdict for the bank against the makers, and in favor of McEntire, the indorser, against the bank.    The bank excepted to the direction of a verdict releasing McEntire.    The question made is, whether the usury rendered void the waiver of homestead and exemption. If the note had been payable otherwise than to a national bank, there would be no difficulty in deciding the question, as this court has frequently held that a waiver of the right of homestead and exemption, made as part of an usurious contract, is void, and, this being true, that "a surety upon a promissory note secretly tainted with usury, of which fact he had no knowledge, is discharged from liability if it contained a waiver of homestead." *Denton* v. *Butler*, 99 *Ga.* 264, and cases cited.    The reason is that the usury made the waiver void, and thus rendered the surety's risk greater than it would otherwise have been.    Does this doctrine apply where the note is payable to a national bank?    Section 5198 of the Revised Statutes of the United States provides that the knowingly taking, receiving, reserving, or charging of usury by a national bank shall be deemed a forfeiture of the entire interest, and in case usury has been paid the bank shall be liable for twice the amount of the interest paid, provided suit is brought for the same within two years from the time the usurious transaction occurred.    It has been held that this statute supersedes the State laws on the subject of usury, so far as they might otherwise be applicable to national banks.    In Farmers' & Mechanics' National Bank *v.* Dearing, 91 U. S. 29, the plaintiff, a national banking association, organized under the national banking act and located and doing business in the State of New York, knowingly discounted the note in suit at a greater rate of interest than was allowed by the laws of that State, and the question was whether that made the note void, as provided by the State statute.    The Court of Appeals of New York, following its decision in Bank *v.* Lamb, 55 N. Y. 95, held that it did, but the Supreme Court of the United States reversed that judgment and held that it did not, and said that banking associations organized under said act are instruments designed to be used to aid the government in the administration of an important branch of the public service; that they are means appropriate to that end; that Congress was the sole judge of the necessity of their creation; that, being such means, and cre-

ated and intended to be employed for such purpose, the States can exercise no control over them, nor in any way affect their operation except in so far as Congress may see fit to permit; that in any view that can be taken of the thirtieth section of said act (U. S. Rev. Sts. § 5198), the power to supplement it by State legislation is conferred neither expressly nor even impliedly; and that when a statute creates a new offense and denounces the penalty or gives a new right and provides the remedy, the punishment or the remedy can be only that provided by the statute.    In Oates *v.* Bank, 100 U. S. 239, it appeared that the First National Bank of Montgomery had several times extended an indebtedness due it by the Tallassee Manufacturing Co., upon each occasion receiving in advance usurious interest for the extension.    Finally the bank granted a further extension to the manufacturing company, upon collateral security being furnished and upon the payment, in advance, of interest at an usurious rate.    Among the collaterals placed with the bank under this arrangement was the note of Oates, payable to the order of the manufacturing company, and by it indorsed in blank.    Oates, when sued by the bank upon the note, sought to set up certain defenses which he had against the manufacturing company, contending that the bank, although it might have taken the note as collateral before its maturity and without notice of such defenses, should not be considered a bona fide holder for value, because the contract under which it received the note involved in its execution a direct violation of the State statutes against usury; and to sustain his contention he relied upon several decisions of the Supreme Court of Alabama, holding that one "who has become the endorsee of a bill by violating the provisions of a statute can not with any degree of propriety be said to be a bona fide holder in the usual course of trade." The indorsement was held not to be void.    Mr. Justice Harlan, delivering the opinion of the court, said : " The statute under which the bank was organized, known as the National Banking Act, does not declare the contract under which the usurious interest is paid to be void.    It denounces no penalty other than a forfeiture of the interest which the note or bill carries, giving to the debtor the right to sue for and recover twice the amount of interest so paid.    If we should declare the contract of indorsement void, and, consequently, that no right of action passed to the bank on the note transferred as collateral security, an additional penalty would thus be added be-

yond those imposed by the law itself.    'On what principle could this court add another to the penalties declared by the law itself?' DeWolf *v.* Johnson, 10 Wheat. 367; Farmers' & Mechanics' National Bank *v.* Dearing, 91 U. S. 29; Barnett *v.* National Bank, 98 Id. 555."

It has been held by the courts of last resort in a number of States that the penalties imposed by the national banking act upon national banks for taking or charging usury are exclusive.    Bank *v.* Pratt, 115 Mass. 539; Davis *v.* Randall, Id. 547;  Bank *v.* Brown, 72 Pa. 209; Bank *v.* Gurlinghouse, 22 Ohio St. 492; Wiley *v.* Starbuck, 44 Ind. 298; Bank *v.* Childs, 133 Mass. 248; Bank *v.* Myers, 74 N. C. 514; Oldham *v.* Bank, 85 N. C. 240; Higgley *v.* Bank, 26 Ohio St. 75; Parker *v.* Bank, 59 N. H. 310 ; Bank *v.* Littell, 46 N. J. L. 506; Bank *v.* Schwenk (Neb.), 64 N. W. 1073; Florence Railroad & Improvement Co. *v.* Bank, 106 Ala. 364; Slaughter *v.* Bank, 109 Id. 157; Hill *v.* Bank, 56 Vt. 582; Rockwell *v.* Bank (Colo.), 36 Pac. 905.    If the law of this State, declaring a waiver of homestead and exemption to be void when it is part of an usurious contract, imposes a penalty or forfeiture for taking or charging usury, then, under the numerous authorities above cited, it can not be applied when the creditor taking or charging the usury is a national bank.    Under our State law, the creditor forfeits all right of enforcing the waiver, as a punishment for taking or charging usury.    Why is it not, therefore, a penalty imposed upon him for so doing?    It is a loss of a valuable right, which he is made to forego by reason of the usury.    It is a burden which the law places upon him, and it seems to be as much a penalty as the forfeiture of the whole interest imposed by the national banking act upon national banks for charging usury. Jackson, C. J., characterized it as a penalty, in *Cleghorn* v. *Greeson,* 77 *Ga.* 343.    On page 349 of the opinion, after saying that a waiver of homestead is in the nature of a quitclaim, as had been held in *Tribble* v. *Anderson,* 63 *Ga.* 55, he declared that "This waiver of homestead and exemption, this quitclaim title, is also forfeited whenever the creditor seeks to set it up in order to collect any part of the debt, because the penalty of usury is the forfeiture of all interest over legal interest when sought to be collected anywhere out of any property of the debtor, and the penalty of usury is also the forfeiture of any sort of title, warranty, or

quitclaim in any contract where usury is also discovered." It is so denominated by Simmons, J., now Chief Justice, in *Zellner* v. *Mobley*, 84 *Ga.* 748, where, speaking of the section of the code which declares that "all titles to property, made as part of an usurious contract, or to evade the laws against usury, are void," he says: "This statute was enacted as a penalty against usury, and for the protection of the borrower or his privies in blood or estate." If it be said that a waiver of homestead which forms a part of an usurious contract is rendered void, not as a statutory penalty for charging usury, but simply because it is based upon an illegal consideration, the reply is that if this were true, every mortgage, or other security not involving title to property, given to secure a debt infected with usury, would be, for the same reason, void, which is not true. *Hodge* v. *Brown*, 81 *Ga.* 276. Besides, it would be anomalous if the waiver were void because based upon an illegal consideration, while the main contract, to which the waiver is a mere incident, is not void. The reason why a security deed infected with usury is void is because the statute has declared that "all titles to property, made as a part of an usurious contract, or to evade the laws against usury, are void" (Civil Code, § 2892), and the reason why a waiver of homestead and exemption, which forms a part of an usurious contract, is void is because "it is enough in the nature of a quitclaim title to be subject to the general rule ordained by statute against passing any kind of title to property for a usurious purpose or as part of a usurious contract." *Tribble* v. *Anderson*, 63 *Ga.* 54-55. That it is the force of the statute alone, and not the illegality in the consideration, which renders a security deed, or a waiver of homestead, tainted with usury, void, is shown by the reasoning of the court in *Hodge* v. *Brown*, supra, where Bleckley, C. J., delivering the opinion, says: "Section 2057 (f) of the Code provides that 'all titles made as part of an usurious contract, or to evade the laws against usury, are void.' Section 1954 declares that 'a mortgage in this State is only a security for a debt, and passes no title.' Tried by statute law, the result is, that any security for a debt, which when pure affords the security by passing title, is, when contaminated by usury, void and of no effect. But a security by mortgage, as it passes no title, is not rendered void by the statute. And we know of no law not statutory which requires or authorizes us to hold that

a mere ordinary mortgage to secure a debt has less vitality than the debt itself." As the law of usury applicable to national banks is found in the national banking act, and the penalties therein prescribed are exclusive, we are of opinion that a waiver of homestead and exemption in a promissory note infected with usury is not void when the note is payable to a national bank. This being true, a surety who signs a note containing a waiver of homestead and exemption, which is secretly tainted with usury, of which fact he has no knowledge at the time of signing, is not discharged from liability thereon, if the note is payable to a national bank, because the risk of the surety has not been increased. It follows that the direction of the verdict for the surety in this case was erroneous.

*Judgment reversed. All the Justices concurring.*