8690.   COOPER *et al.,* receivers, *v.* NATIONAL BANK OF
SAVANNAH.

1. The provisions of the acts of Congress constitute the ultimate authority relative to the operation of national-banks, and the decisions of the Supreme Court of the United States will be followed by the State courts in the construction of those statutes.

2. The national-bank laws of Congress adopted as the authorized rate of interest that permitted by the laws of the several States where such banks might be located; but Congress did not adopt the prohibition imposed by the Georgia statute upon the taking of interest at the highest authorized rate in advance by way of discount, but on the contrary, by section 5197 of the Revised Statutes, specifically authorizes national banks to reserve, on any discount made, interest at the rate allowed by the laws of the several States.

3. In order to maintain a suit under section 5198 of the Revised Statutes of the United States, for the recovery of the penalty there imposed for the charging of usury which has been actually paid, such actual payment must be alleged and shown.

DECIDED DECEMBER. 11, 1917.

Action for penalty.   Before Judge Meldrim.   Chatham superior court.   March 26, 1917.

This suit was brought by the receivers of the Citizens & Screven County Bank against the National Bank of Savannah, alleging in substance that the defendant had knowingly received, charged, and taken from the Citizens & Screven County Bank interest in excess of the highest contractual rate allowed under the laws of the State of Georgia; and it was sought to recover the penalty for usury imposed by the Federal statute upon national banks. An exhibit was attached to the petition, showing a list of the loans made, which in each instance set forth the date, the time the loan was to run, the interest charged, the highest interest charge allowable by law, and the amount actually charged in excess thereof. Usury was alleged to have been received on each of these loans, in that interest was reserved in advance by way of discount at the highest rate allowed by law. The amount of such alleged usury was arrived at by taking the amount actually received under each loan and calculating eight per cent. interest thereon for the time it was to run, and all interest reserved in excess of such amount was alleged to be usury. It was shown that each of the loans so made, including the alleged usurious interest embraced in each, had been paid at its respective maturity. It was further alleged that the defendant bank further knowingly took, received, reserved, and charged the Citizens & Screven County Bank, and the last-named bank paid to the defendant, a rate of interest greater than is allowed by law, in that it was understood and agreed between the borrower and the lender, at the time of the making of all of said loans, that the Citizens &. Screven County Bank should, at all times while it was a borrower, keep on deposit with the National Bank of Savannah at least the sum of $10,709.31, which could only be used towards the payment of said indebtedness, and from the 2d day of November, 1914, to the 17th day of November, 1915, such deposit was continuously and uninterruptedly maintained by the borrower under such requirement with the defendant, all of which was knowingly done for the purpose of exacting usury from the borrower, the use of the $10,709.31 to the Citizens & Screven County Bank, which was denied to it, being worth at least a rate of interest of seven per cent. per annum, or $1,499.30 for said period of time, and equally worth to the defendant at least seven per cent. per annum during said period. An amendment to the petition was filed, striking the amount originally claimed to be

the total amount of interest taken as being the sum of $8,837.52, and substituting in lieu thereof the sum of $7,338.22, and substituting double the latter amount instead of twice the former as the amount of the penalty sued for. The reason of this amendment is thus explained in the brief of counsel for plaintiff in error: "The original petition sought to recover the amount of interest charged to the defendant in the petition on the deposit of $10,709.31. This was amended and stricken, because the interest on that amount, while lost to the plaintiff, was not *paid* to the defendant. In other words, the plaintiff can not recover, under the statute, for interest lost; but for *usury paid;* and while the requirement of the deposit, on the conditions named, was really in itself a usurious transaction, the plaintiff could not recover the penalty computed on that amount." A demurrer to the petition as amended was filed, and was sustained; to which ruling exception is taken.

*Saussy & Saussy,* for plaintiffs.

*Edward S. Elliott, Garrard & Gazan,* for defendant.

JENKINS, J. (After stating the foregoing facts.)

1. The Revised Statutes of the United States, as to national banking associations, provide as follows: Section 5197: "Any association may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or district where the bank is located, and no more, except that where by the laws of any State a different rate is limited for banks of issue organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this Title. When no rate is fixed by the laws of the State, or Territory, or district, the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days from which the note, bill, or other evidence of debt has to run. And the purchase, discount, or sale of a bona fide bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight-drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest." Section 5198: "The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a for-

feiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same; provided such action is commenced within two years from the time the usurious transaction occurred." Section 5136 (7) provides that a national banking association may "exercise . . all such incidental powers as shall be neces-.. sary to carry on the business of banking; by discounting ..and negotiating promissory notes, drafts, bills of exchange, - and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title." (U. S. Comp. Stat. 1916, §§ 9758, 9759, 9761.) The Georgia statute defines usury as "the reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest." Civil Code (1910), § 3427. The Code (§ 3436) further declares: "It shall not be lawful for any person, company, or corporation to reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever." In the case of *Loganville Banking Co.* v. *Forrester*, 143 *Ga.* 302 (84 S. E. 961, L. R. A. 1915D, 1195), the Supreme Court of this State held that "The reserving of interest in advance by a bank at the highest legal rate of interest on a loan, whether it be a short or long-term loan, is usurious." We might formulate and state the contentions of the plaintiff as follows: For a national bank to receive on any loan or discount more than the rate of interest allowed by the law of the State where it is located is a usurious transaction; in Georgia eight per cent. interest in advance by way of discount is by the State law usurious; therefore for a national bank in Georgia to receive eight per cent. in advance by way of discount is usurious. The contention of plaintiff is sustained by the decision in: Tim-

berlake *v.* Bank, (U. S. Circuit Court, N. D. Mississippi), 43 Fed. 231 (3), where it was held that under the Mississippi code, which only allows interest on the amount of money actually lent, a national bank in that State can not deduct interest in advance. The ruling made in the *Loganville Banking Co.* case is based upon the provisions of the Georgia statute against usury, which "expressly forbids an increase of the maximum interest rate by way of discount," and in that case it is stated that "All laws respecting the rate of interest charged for the loan of money by individuals are applicable to banks," citing Civil Code (1910), § 2336. Therefore the question with which we are now concerned is whether, under the authority of the national-bank act as interpreted by the Federal decisions, a national bank can charge the highest rate allowed under the State law by way of discount in advance, although State banks are prohibited from so doing. Counsel for the defendant contend that they may, for the reason that while the State law specifically prohibits State banks over which it has control from thus exceeding the maximum rate by way of discount (which prohibition constitutes the basis of the decision in the *Loganville Banking Co.* case), the national-bank act, supra, expressly allows national banks to charge the highest rate allowed under the State law by way of discount, the meaning of such authorized power to discount necessarily being to take out and reserve such interest in advance.

The acts of Congress providing for the creation and operation of national banks, as construed by the Federal courts, constitute the ultimate and paramount authority on this subject. *Hansford* v. *National Bank of Tifton,* 10 *Ga. App.* 270 (73 S. E. 405); *Farmers National Bank* v. *Dearing,* 91 U. S. 29 (23 L. ed. 196); *Bates* v. *First National Bank of Dalton,* 111 *Ga.* 757 (36 S. E. 949); *First National Bank of Dalton* v. *McEntire,* 112 *Ga.* 232 (37 S. E. 381); *Reese* v. *Colquitt National Bank,* 12 *Ga. App.* 472 (77 S. E. 320). In *Haseltine* v. Bank, 183 U. S. 134 (22 Sup. Ct. 51, 46 L. ed. 118), the Supreme Court of the United States said: "The definition of usury, and the penalties fixed thereto, must be determined by the National Banking Act, and not by the laws of the State." Thus, the act of Congress relating to the operation of national banks might have authorized them to charge a rate of interest in excess

of that allowed under the State law; it might have restricted the power to discount under that rate to the right existing under the laws of the State where located; or it might have conferred such power to discount under the authorized State rate, irrespective of any such authority under the State law. It was within the scope of the authority of Congress to prescribe as the penalty for usury upon national banks that which is provided under the law of the several States; or it might, as was in fact done, provide a separate and exclusive penalty, which in fact happens to be double in amount and in severity that imposed under the law of this State. It was the opinion of the eminent trial judge who sustained the demurrer in the present case that the act of Congress did not adopt the State law upon the question of usury further than it relates to the rate of interest allowed by the laws of the State. In this opinion we agree. It does not appear that the Federal statute prohibits, as does the Georgia law, the discount of paper at the highest contractual rate; but on the contrary it seems to specifically authorize any national bank to "reserve, . . . on any . . discount made, . . interest at the rate allowed by the laws of the State . . where the bank is located" (Revised Statutes, § 6197, supra). It will also be observed that, under the language of the seventh paragraph of section 5136, R. S. U. S., defining the powers of a national bank, discounting is specifically included. That the import of the word "discount" necessarily carries with it the charging of interest in advance is shown by what was said by the Supreme Court of the United States in the case of Fleckner v. Bank of United States, 21 U. S. (8 Wheat.) 338, 351 (5 L. ed. 631), where Judge Story, speaking for the court says: "Nothing can be clearer than that by the language of the commercial world, and the settled practice of banks, a discount by a bank means, ex vi termini, a deduction or drawback made upon its advances or loans of money, upon negotiable paper, or other evidences of debt, payable at a future day, which are transferred to the bank." See also the recent case of McCarthy v. First National Bank, 223 U. S. 493, 499 (32 Sup. Ct. 240, 56 L. ed. 523). A distinction has sometimes been held to exist between a direct loan and a purchase and discount of commercial paper, but in the case of Morris v. Third National Bank, 142 Fed. 25, 31 (73 C. C. A. 211), it was held by the Circuit Court of Appeals that no

such distinction can be made; and it was there said that "the discounting of promissory notes and other evidence of debt is within the express granted powers of national banks." Rev. Stat. U. S. § 5136. And the court further holds that that term is sufficiently comprehensive to include the acquisition both by way of purchase and by ordinary loan; quoting National Bank *v.* Johnson, 104 U. S. 271 (26 L. ed. 742), in which case it was said that "the terms, 'loans' and 'discounts,' are synonyms." The Fleckner decision also holds that the taking of interest in advance in the ordinary course of business does not constitute usury. Thus the court says (21 U. S. 354) that an authority to discount or make discounts, from the very force of the terms, necessarily includes an authority to take interest in advance. "And this is not only a settled opinion among professional and commercial men, but stands approved by the soundest principles of legal construction. Indeed, we do not know in what other sense the word discount is to be interpreted. Even in England, where no statute authorizes bankers to make discounts, it has been solemnly adjudged that the taking of interest in advance by bankers, upon loans in the ordinary course of business, is not usurious." The Fleckner case has been followed in many decisions rendered by the various judicatories of the country, State and Federal; and it must be regarded as well established that, in the absence of any statute to the contrary, similar to that of force in this State, interest may be taken in advance by way of discount, at least on short-time paper, at the highest rate allowed by law. See Bank of Newport *v.* Cook, 60 Ark. 288, as reported in 29 L. R. A. 761, with note (30 S. W. 35, 46 Am. St. R. 171). Thus, while in the able opinion of our Supreme Court, as rendered by Presiding Justice Evans, it was held as the law of this State, and, as we think, manifestly correctly, that under the Georgia statute discount taken at the highest rate is prohibited as being usurious, the ruling made in that case would not apply to the powers of a national bank operating under Federal law which does not thus prohibit the taking of such discount; but, on the contrary, expressly authorizes it, which practice, as thus authorized, has been declared by the Supreme Court of the United States not to be usurious. It is true that the Fleckner decision was rendered long prior to the enactment of the present national-bank act; but the point is that this act as now

of force authorizes *discount* at the highest rate allowed under the laws of the several States, and the ruling in the Fleckner case holds that such a practice is not usurious. As regards the operation of national banks within the State of Georgia, Congress adopted the *rate* of interest as here prescribed, but went no further, and not only did not adopt our inhibition upon discounting at that rate, but, on the contrary, gave specific authority therefor, which practice, in the absence of any such inhibition, has been held by the Supreme Court of the United States not to be usurious.

2-3.   The gist of section 6198 of the U. S. Revised Statutes is to provide that the charging of usury by a national bank shall cause a forfeiture of the entire interest; and that where such illegal interest shall have been actually paid, the bank shall forfeit twice that amount. Thus, the mere charging or stipulating for a usurious rate of interest, which has not been actually paid, causes a forfeiture of any interest in an action on the debt brought by the bank, while the actual payment of usury to a national bank renders it subject to an action maintained against it for twice the amount of the entire interest paid. The questions, therefore, relating to the second ground of complaint as set forth by the petition in the court below, are: 1st. Did the requirement that the borrowing bank should at all times during the period covered by the different loans keep and maintain on deposit with defendant a sum amounting to not less than $10,709.31, "which could only be used towards the payment of said indebtedness," render the transaction usurious? And 2d. If so, could such consummated requirement be treated as such a usurious transaction as would not only prevent the recovery of all interest in an action for the debt brought by the lender, but one which could be taken as such an actual *payment* of illegal interest as would authorize an independent suit maintained by the borrower to recover the prescribed penalty of twice the amount of all interest actually paid? Counsel for the defendant bank contend that under the pleadings the sum required to be left with it did not exist as a general deposit, such as would have passed the title thereto to the defendant and created the relation of debtor and creditor between it and plaintiff, but that the fund constituted a special deposit, or rather a "deposit for a specific purpose," which had to be held by the defendant bank for that particular purpose only, and which it

could not have otherwise used. They say that if the plaintiff bank lost the use of its money while so held, such result was occasioned solely by its own failure to apply it in payment of the indebtedness, "which meant, of course, the principal of the indebtedness." A deposit for a specified purpose has been thus defined in 7 C. J. 631: "A deposit may be for a specific purpose, as where money or property is delivered to the bank for some particular designated purpose, as a note for collection, money to pay a particular note or draft, etc. While such a deposit is sometimes termed a 'special deposit' and partakes of the nature of a special deposit to the extent that title remains in the depositor and does not pass to the bank, yet it seems more accurate to look on this as a distinct class of deposit. In using deposits made for the purpose of having them applied to a particular purpose, the bank acts as the agent of the depositor; and if it should fail to apply it at all, or should misapply it, it can be recovered as a trust deposit; and the agency created by the deposit is revocable by the depositor at any time before the purpose of the deposit has been accomplished." It thus appears that the proper meaning of such a deposit is that in making it a trust fund is constituted, with respect to which a special duty as to its application is assumed by the bank. And it was held in *Mayer* v. *Chattanooga National Bank,* 51 Ga. 325, that where such a deposit is made with specific direction that it shall be paid out to a check in favor of a named party which has been or will be given, the fund still remains the property of the depositor until the bank either pays or promises to pay the same to the person for whose benefit the deposit was made. But in the present case, can the enforced deposit be properly regarded either as special or for a specific purpose merely for the reason that the plaintiff might have applied it towards the extinguishment of the debt? The main outstanding feature of its existence lies in the fact that it was *enforced.* It might be implied from the language of the petition that the lender could at any time, and before the maturity of the loan, withdraw the deposit for the sole purpose of applying it on the indebtedness; but such implied privilege could not be taken as changing the maturity of the loan notes; and so such use of the deposit would merely constitute a prepayment, and as such would not relieve the maker of the notes from the payment of interest as provided for therein. It is true that

upon the voluntary prepayment of a note, the exacting of the full specified legal interest which would have accrued up to its maturity does not constitute usury (*Savannah Savings Bank* v. *Logan, 99 Ga.* 291, 25 S. E. 692); but where such prepayment is not voluntary, but is compelled by reason of the fact that an enforced deposit in the amount of the payment is the necessary alternative, then, under either horn of the dilemma, either such payment or such deposit would constitute usury. In the search for usury, it is not the matter of form, but of substance which is essential. *Pope* v. *Marshall, 78 Ga.* 635 (4 S. E. 116); *Rushing* v. *Worsham, 102 Ga.* 825, 829 (30 S. E. 541). Thus, if the requirement of the lender that the borrower should maintain such a deposit was in fact merely a scheme or device by which the usurious intent could be concealed, then the transaction would be illegal, whatever its form. In 39 Am. & Eng. Enc. Law (2d ed.), 509 (2), the following rule is stated: "In the case of loans or discounts by a bank at the highest legal rate of interest, a provision that the proceeds of the loan or discount or any part thereof shall be kept as a deposit in the bank during the period or a portion of the period of the loan renders the transaction usurious, for the reason that the borrower thus pays interest on money which he does not receive or have the use of. But the fact that the borrower voluntarily allows a part of the loan to remain on deposit with the banker, without any agreement therefor, will not constitute the giving or taking of usury, though such deposit is made with the expectation by the borrower that he will thereby be enabled to obtain further loans more readily." In the case of East River Bank *v.* Hoyt, 32 N. Y. 119, it was held: "An arrangement by which one seeking a discount at a bank is required to obtain a discount of paper amounting to $1,500, to secure the application to his use of $1,000 of the proceeds, without the right to use the remainder thereof except in payment of the paper discounted when it shall become due, renders the transaction usurious."

Turning now to our second inquiry, and treating the transactions between the parties to the present suit as being in fact thus infected with usury, was there such a *payment* of illegal interest by reason of such enforced deposit as would authorize a suit to recover the penalty of twice the amount of all interest actually paid? Bearing in mind that we are now dealing with the trans-

action as regards the alleged payment of usury solely upon the basis of the allegations made relative to the enforced deposit, we find the rule in regard to the sufficiency of the payment of usury stated as follows, in 39 Cyc. 1091 (2) : "The payment of usurious interest necessary to entitle the debtor to recover the statutory penalty must be an actual payment in money or money's worth. Nothing less will suffice. A renewal or other substituted obligation given by the original debtor is not a sufficient payment." In Lomax *v.* First National Bank (Tex. Civ. App.), 39 S. W. 655, it is held that in an action by a national bank on a note, a cross-action for the statutory penalty against the bank for taking usurious interest can not be maintained where the plea of usury fails to give the amount of usurious interest paid. Referring to the petition in the present suit as amended, we find no allegation setting forth the amount of usury paid by plaintiff to defendant by reason of such required deposit. On the contrary, the original averment setting forth the amount of such usurious payment has been stricken by plaintiff, for the reason, as stated in the brief of its counsel, that "the interest on that amount, while lost to the plaintiff, was not *paid* to the defendant. In other words, the plaintiff can not recover, under the statute, for interest lost, but for *usury paid;* and while the requirement of the deposit, on the conditions named, was really in itself a usurious transaction, the plaintiff could not recover the penalty computed on that amount." Thus, while the very able and learned counsel for plaintiff contend that the transactions embraced in the present suit are tainted with usury by reason of the enforced deposit, still, they themselves do not allege or contend that such an executed requirement constitutes an actual payment of usury by the plaintiff to the defendant; and under the provisions of section 5198 of the Revised Statutes, an averment to that effect is a necessary requirement to the maintenance of a suit to recover the penalty there imposed for the charging of illegal interest which has been actually paid. See generally, Citizens' National Bank of Danville *v.* Gentry, 111 Ky. 206 (63 S. W. 454), as reported in 56 L. R. A. 673, to which an exhaustive note is appended.

*Judgment affirmed. Wade, C. J., concurs. Luke, J., dissents.*